## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 93-CA-00955-SCT

*DONALD DEAN SUMRALL*

*v.*

*MISSISSIPPI POWER COMPANY AND SOUTHERN
COMPANY SERVICES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/12/93 |
| TRIAL JUDGE: | HON. T. LARRY WILSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | HENRY RAYMOND MITCHELL |
| | CATHERINE H. JACOBS |
| ATTORNEY FOR APPELLEE: | W. LEE WATT/PATRICK R. BUCHANAN |
| NATURE OF THE CASE: | CIVIL - WORKER'S COMPENSATION |
| DISPOSITION: | DIRECTED VERDICT IN FAVOR OF SOUTHERN COMPANY SERVICES AFFIRMED; JURY VERDICT AND JUDGMENT IN FAVOR OF MISSISSIPPI POWER REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THE OPINION OF THE COURT - 3/6/97 |
| MOTION FOR REHEARING FILED: | 3/19/97 |
| MANDATE ISSUED: | 5/22/97 |

**BEFORE SULLIVAN, P.J., ROBERTS AND SMITH, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

¶1. This case involves a negligence action in the Circuit Court of Jackson County by Donald Dean Sumrall to recover damages resulting from injuries allegedly suffered while working for an independent contractor on premises owned by Mississippi Power Company. Sumrall named as defendants Mississippi Power Company and Southern Company Services, Inc. The trial court ordered a directed verdict in favor of Southern Company Services and submitted the claim against Mississippi Power Company to the jury, which returned a verdict in favor of Mississippi Power Company. The trial court denied Sumrall's motions for j.n.o.v. and a new trial.

# FACTS

¶2. Mississippi Power Company ("Mississippi Power") runs a coal burning operation at its Plant Daniel facility in Jackson County, Mississippi. The coal burning process leaves a silty, powdery residue called "fly ash," of which the Plant Daniel facility generates about 65,000 tons per year. Mississippi Power transfers the residue to a fly ash pond, which is connected by means of a pipe and discharge structure to a bottom ash pond. In early 1990, there were some "clogging" problems with the discharge structure which were impeding flow from the fly ash pond to the bottom ash pond. Whereas Mississippi Power would normally hire someone to come in and "unplug" the discharge structure, it was decided this time that it was necessary to replace the structure altogether.

¶3. Mississippi Power hired Southern Company Services, Inc. ("Southern Company Services") to design the new discharge structure. W.C. Fore Trucking, Inc. ("W.C. Fore") was an independent contractor engaged in hauling excess fly ash for Mississippi Power from the fly ash pond to other storage landfills. Mississippi Power contracted with W.C. Fore by way of an extra work order to assemble and install the new discharge structure. The extra work order provided only that W.C. Fore would "[i]nstall new ash pond discharge structure per approved SCS drawings and plant construction manager," and incorporated by reference the terms and conditions of W.C. Fore's existing contract with Mississippi Power.

¶4. The original contract provided specifications for the work to be performed under it and provided that W.C. Fore was employed as an independent contractor subject to Mississippi Power's general supervision. W.C. Fore was to "employ and pay such workers as may be required to perform said work, use Contractor owned equipment unless and to the extent otherwise permitted by said specifications, follow contractor's own working methods in complying with said specifications, and superintend said work and labor personally." As to Mississippi's Power's right of inspection, the contract provided:

> The Purchaser shall have the right to inspect the Contractor's work as deemed necessary. The Purchaser shall have the right to inspect the Contractor's work locations, the materials in use, to follow the progress of the work and the manner in which it is being done. The Purchaser shall have the authority to reject materials or suspend any work not being properly performed or that is not in accordance with these Specifications. The Contractor has the responsibility for his work being performed properly and in accordance with these Specifications and the presence of an inspector shall not relieve the Contractor or his responsible agents of that responsibility.

Mississippi Power's plant project construction manager, David Hansen, visited the job site two or three times per day while the work under the extra work order was being performed.

¶5. Because the discharge structure was buried beneath about thirty feet of fly ash, the project required digging a trench with sloping sides between the fly ash pond and the bottom ash pond in order to remove and replace the structure. A dam of fly ash was built on the side of the work site to prevent water from the fly ash pond from entering the excavation. During the excavation, it was necessary to use a hydraulic pump to continuously pump out water that was seeping into the excavation area. As the excavation neared the underground discharge structure, an eight foot trench was dug with near vertical sides in order to reach the structure itself.

¶6. On March 5, 1991 Donald Dean Sumrall, an employee of W.C. Fore, was in the trench with several other men using shovels to uncover the discharge valve when the dam began leaking water which entered the trench. It is unclear from the testimony whether the sides of the trench then caved in, momentarily burying the men in the trench, or whether it was only water that entered the trench. In any event, Sumrall filed suit on July 23, 1991, in the Circuit Court of Jackson County against Mississippi Power to recover damages allegedly resulting from injuries sustained during this accident. On March 23, 1992, Sumrall amended his complaint to include Southern Company Services as a defendant.

¶7. At the close of Sumrall's case in chief, the trial court ordered a directed verdict in favor of Southern Company Services. At the close of all the evidence, the trial court submitted to the jury the claim against Mississippi Power under Sumrall's theory that Mississippi Power would be liable for the negligence of its independent contractor, W.C. Fore, if Mississippi Power retained or exercised control or had the right to control the manner and method of the excavation work required by the extra work order to replace the discharge structure. The jury returned a verdict in favor of Mississippi Power, and the trial court rendered judgment accordingly.

## DISCUSSION OF LAW

### I. WHETHER THE TRIAL COURT ERRED IN ORDERING A DIRECTED VERDICT IN FAVOR OF SOUTHERN COMPANY SERVICES AND IN INSTRUCTING THE JURY REGARDING THE DUTY OF CARE OWED TO SUMRALL BY MISSISSIPPI POWER COMPANY.

¶8. Because Sumrall raises two unrelated issues under this assignment of error, we shall discuss the issues separately below.

### A. Directed Verdict in Favor of Southern Company Services

¶9. Sumrall asserts that the trial court erred in ordering a directed verdict in favor of Southern Company Services. However, Sumrall neither argues why the trial court erred in this regard nor offers any authority in support thereof, instead confining his argument exclusively to the duty of care owed by Mississippi Power. Because the appellant bears the burden of persuasion on appeal, this Court will not consider issues on appeal for which the appellant cites no supporting authority. *Century 21 Deep South Properties, Ltd. v. Corson*, 612 So. 2d 359, 370 (Miss. 1992); *R.C. Petroleum, Inc. v. Hernandez*, 555 So. 2d 1017, 1023 (Miss. 1990). Because Sumrall neither argues this issue nor cites any authority in support thereof, we decline to consider this issue on appeal. We therefore affirm the directed verdict in favor of Southern Company Services.

### B. Jury Instructions Regarding the Duty of Care Owed to Sumrall

### by Mississippi Power Company.

¶10. Sumrall argues that the trial court erred in refusing to instruct the jury regarding the theory of liability set forth by this Court in *Whatley v. Delta Brokerage and Warehouse Co.*, 248 Miss. 416, 159 So. 2d 634 (1964). That case involved a negligence action by an employee of an independent contractor to recover damages for injuries sustained when a grain bin constructed by the contractor

collapsed. *Whatley*, 248 Miss. at 420-22, 159 So. 2d at 635-36. Affirming as to the liability of the owner of the premises, the Court held:

> [A]n owner is liable for failure to furnish his contractor's employee a reasonably safe place to work when such employee is injured by the collapse of an elaborate or complicated structure because the owner failed to use reasonable care to have an architect or other competent person design the structure and supervise its construction.

*Id.* at 424, 159 So. 2d at 637. Sumrall contends the trial court erred in failing to instruct the jury regarding this duty of care owed to Sumrall by Mississippi Power.

¶11. In order for a jury instruction to be properly given, there must be a sufficient evidentiary basis for it. *Tharpe v. Bunge Corp.*, 641 So. 2d 20, 26 (Miss. 1994); *DeLaughter v. Lawrence County Hosp.*, 601 So. 2d 818, 824 (Miss. 1992). "A party to an action is entitled to have the jury instructed regarding a genuine issue of material fact so long as there is credible evidence in the record which would support the instruction." *Copeland v. City of Jackson*, 548 So. 2d 970, 973 (Miss. 1989) (quoting *Hill v. Dunaway*, 487 So. 2d 807, 809 (Miss. 1986)). We find there was not a sufficient evidentiary basis in the record to support an instruction regarding the *Whatley* duty of care. There was no proof that the excavation was a complicated structure which required an architect or other competent person to design and construct, nor was there evidence that, even if the excavation was a complicated structure, W.C. Fore was not qualified to perform the excavation.

¶12. Sumrall points out the testimony of one of his experts, T.E. Daughdrill, that industry standards require that before excavations deeper than five feet are begun, proper planning would include analysis of the soil, water content and vibration from any nearby source that might affect the stability of the slopes. However, Mr. Daughdrill admitted that his testimony was not based on any experience in planning or designing excavations and that he had no experience with fly ash. In fact, the trial judge did not allow Mr. Daughdrill to testify about Jackson County ordinances regarding excavations due to his lack of qualification in that area. We believe the above testimony is not the sort of sufficient credible evidence required to support a jury instruction regarding the *Whatley* duty of care. Furthermore, Sumrall's other expert witness, Lawrence Rumsey, testified that he could not give an opinion about fly ash or the subject excavation and that he had no opinion regarding the work done by W.C. Fore.

¶13. Sumrall contends that had he been allowed to introduce evidence regarding subsequent remedial measures taken by Mississippi Power after the accident, there would be evidence that the assistance of engineers was necessary to safely complete the project, which evidence would be sufficient to support the jury instruction at issue. However, even if such evidence had been admitted, it clearly could not be used to show negligence or culpable conduct in connection with the accident in question under Mississippi Rule of Evidence 407. Because Sumrall failed to offer sufficient credible evidence either of the complexity of the excavation or of the under-qualification of W.C. Fore to perform the excavation, the trial court did not err in refusing to instruct the jury regarding the *Whatley* theory of liability.

¶14. Sumrall also argues that the trial court erred in granting certain Defendant's Instructions, primarily Instruction DI-8, which reads:

> The Court instructs the jury that, as a matter of law, the owner of property has no liability for injuries to the employees of an independent contractor, where those injuries occurred because of or were connected with the work being done by the independent contractor for the property owner.
>
> The Court further instructs the jury that if you find that the Plaintiff was injured, and that his injuries occurred because of, or were connected with, the excavation work being done by W.C. Fore Company for Mississippi Power Company, then you must return a verdict for the Defendant, Mississippi Power Company.

Sumrall contends this instruction amounted to a peremptory instruction which took from the jury the right to determine whether Mississippi Power retained or exercised the right to control the manner and method of the excavation, effectively removing from the jury's consideration all theories of liability under which the jury could find for Sumrall.

¶15. When viewing the propriety of a jury instruction, this Court will view the questioned instruction in light of all other instructions which were given to determine whether the jury was correctly instructed. ***Munford, Inc. v. Fleming***, 597 So. 2d 1282, 1286 (Miss. 1992). "So long as all the instructions read together adequately and properly instruct the jury on the issues, an individual instruction given to the jury will not constitute reversible error." ***Detroit Marine Engineering v. McRee***, 510 So. 2d 462, 467 (Miss. 1987).

¶16. Instruction DI-8 merely states the general rule that a premises owner is not liable for injuries sustained by an independent contractor's employees whose injuries arose out of or were connected with the independent contractor's work. Although when read alone this instruction might seem to mandate a jury verdict in favor of Mississippi Power, the trial court also granted Plaintiff's Instructions P-2 to P-4 which set forth the rule's corollary, stated in ***Magee v. Transcontinental Gas Pipe Line***, 551 So. 2d 182, 185-86 (Miss. 1989), that the premises owner may be liable for the negligence of its independent contractor if the owner retained or exercised control or had the right to control the manner and method of the contractor's work.

¶17. When he granted Instruction DI-8, the trial judge expressed some concern about the peremptory nature of the instruction, but determined that "by the time we get all the Jury instructions in we'll have something to offset that." We believe the trial judge was correct, and that when read together, the instructions adequately and fairly instructed the jury on the theory of liability by which the jury could return a verdict in favor of Sumrall. We therefore find this assignment of error to be without merit.

### II. WHETHER THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES TAKEN BY MISSISSIPPI POWER COMPANY.

¶18. At trial Sumrall proferred the testimony of Bruce Roberts, a project engineer employed by Mississippi Power, regarding events that occurred after the accident in question. Mr. Roberts testified that after the accident, the project was shut down while he sought technical support from engineers employed by Southern Company Services, who then designed "sheet pilings" to prevent the walls of the excavation from caving in. W.C. Fore installed the sheet pilings and the project proceeded to its

conclusion. After this testimony, the trial judge excluded the evidence as improper evidence of subsequent remedial measures under Rule 407 of the Mississippi Rules of Evidence. Sumrall argues that under Rule 407, this evidence was admissible to show that Mississippi Power had control of the project at the time of the accident, and thus the trial court erred in excluding the evidence.

¶19. Rule 407 reads:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, <u>control</u>, or feasibility of precautionary measures, if controverted, or impeachment.

(emphasis added). The admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. *General Motors Corp. v. Jackson*, 636 So. 2d 310, 314 (Miss. 1992), *cert. denied*, 115 S.Ct. 317 (1994); *Walker v. Graham*, 582 So. 2d 431, 432 (Miss. 1991).

¶20. Although this Court has had no opportunity to discuss the admissibility of subsequent remedial measures to prove control, Sumrall cites several federal cases which appear to be directly on point. The case of *Woolard v. Mobil Pipe Line Co.*, 479 F.2d 557, 560-561 (5th Cir.), *reh'g denied*, 480 F.2d 925, *cert. denied*, 414 U.S. 1025 (1973), involved a suit against an oil company and a pipe line company for the wrongful death of three workers killed in an explosion at a metering station. The oil company, denying that it had control of the station, objected to evidence that after the accident it participated in decisions to modify operating procedures at the station. *Woolard*, 479 F.2d at 563. The Fifth Circuit held that the evidence was properly admitted to show control under the trial court's limiting instruction. *Id.*

¶21. In *Waller v. Kitchens of Sara Lee, Inc.*, 419 F.2d 1028, 1030 (7th Cir. 1969), the plaintiff sued a bakery for injuries caused by a conveyor belt which was subsequently repaired by the bakery. Because there was a dispute at trial as to who was responsible for the repair and daily maintenance of the conveyor belt, the Seventh Circuit held that evidence of the repairs was admissible to show that the bakery controlled the conveyor. *Waller*, 419 F.2d at 1032.

¶22. The case of *Parsons v. Blount Brothers Construction Co.*, 281 F.2d 414, 415-16 (6th Cir. 1960), involved a suit against a general contractor for the wrongful death of an employee of a subcontractor who was killed by electrocution when a crane came into contact with an overhead electrical wire. Because a key issue in the case was whether the contractor or the subcontractor controlled the operation of the crane, the Sixth Circuit held that evidence that the contractor subsequently locked and welded the crane in a position so that it could not touch the wire was admissible as probative of the issue of control. *Parsons*, 281 F.2d at 418-19.

¶23. In *Slattery v. Marra Bros., Inc.*, 186 F.2d 134, 135-36 (2d Cir.), *cert. denied*, 341 U.S. 915 (1951), the plaintiff sued the tenant of a pier for injuries sustained when a defective door on the pier fell on the plaintiff. Because the tenant admitted he had "general control" of the pier, but denied that he had control of the defective door, the Second Circuit held that evidence that the tenant repaired the door the day after the accident was admissible to show control. *Slattery*, 186 F.2d at 137.

¶24. In the case *sub judice*, there is no doubt that a central issue was whether Mississippi Power had control over the project to install the new discharge structure. We find that evidence that Mississippi Power shut down the project after the accident and brought in engineers to ensure the safe completion of the project, although not conclusive, was relevant to whether Mississippi Power had control at the time of the accident. We believe this is exactly the type of situation envisioned by Rule 407 in which evidence of subsequent remedial measures, while not admissible to show negligence, is admissible to show control. We therefore find the trial court abused its discretion in excluding this evidence. Accordingly, we reverse on this issue and remand for a new trial with instructions to the trial court that this evidence be admitted under a limiting instruction.

### III. WHETHER THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE THAT MISSISSIPPI POWER COMPANY VIOLATED OSHA REGULATIONS AND OTHER ORDINANCES.

¶25. The trial court, upon a motion in limine by Mississippi Power and Southern Company Services, ordered that evidence of Occupational Safety and Health Act (OSHA) regulations would not be allowed at trial. At trial, during direct examination of W.C. Fore, counsel for Sumrall asked Mr. Fore whether his work on the installation of the new discharge structure complied with all federal and state regulations, to which Mr. Fore replied, "Yes." Counsel for Sumrall then requested permission of the court to introduce evidence of OSHA violations for the purpose of impeaching Mr. Fore, which request the court denied. Later, during direct examination of his expert witness, T.E. Daughdrill, Sumrall proffered Mr. Daughdrill's testimony regarding W.C. Fore's violations of OSHA regulations dealing with excavations.

¶26. Sumrall argues that the trial court erred in excluding evidence of OSHA regulations both as evidence of negligence on the part of Mississippi Power and for impeachment purposes. Sumrall also argues that the trial court erred in excluding evidence of violations of Jackson County ordinances and other industry standards.

### A. OSHA Regulations

¶27. As already stated, the admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. *General Motors Corp. v. Jackson*, 636 So. 2d 310, 314 (Miss. 1992), *cert. denied*, 115 S.Ct. 317 (1994); *Walker v. Graham*, 582 So. 2d 431, 432 (Miss. 1991). "Great deference is given to a trial court's decision on the admission or exclusion of evidence due to relevance." *Sperry-New Holland v. Prestage*, 617 So. 2d 248, 260 (Miss. 1993).

¶28. The Occupational Safety and Health Act mandates the promulgation of safety and health standards by the U.S. Secretary of Labor. Such standards have the force of federal law and violations are punishable by specified criminal and civil penalties. 29 U.S.C. §§ 654-56. While there is a split of authority among state courts as to whether OSHA regulations are admissible as evidence of the appropriate standard of care for purposes of proving negligence, this Court has had no opportunity to make its determination of this issue. However, in *Catholic Diocese of Natchez-Jackson v. Jaquith*, 224 So. 2d 216, 220 (Miss. 1969), this Court stated that with regard to governmental safety codes and regulations, "[a] majority of the states follow the rule that such codes are admissible only when

they have been given compulsory force by the state legislatures. . . . Mississippi has followed the majority rule for a number of years and we think properly so." (citations omitted). Unlike some other state legislatures, the Mississippi Legislature has specifically declined to give OSHA regulations compulsory force under state law. Miss. Code Ann. § 71-1-1(f) (1972).

¶29. In *Otto v. Specialties, Inc.*, 386 F. Supp. 1240, 1244-45 (N.D. Miss. 1974), the District Court for the Northern District of Mississippi was forced to make an *Erie* determination of whether OSHA regulations were admissible as evidence of negligence under Mississippi negligence law. In finding the regulations to be not admissible, the district court stated:

> We believe the Supreme Court of Mississippi, if faced with this question, would recognize, as we do, that what is at stake here is a question of judicial buttressing of legislative goals. We believe that with this recognition would come a realization that, before the judiciary undertakes to supplement legislatively designed sanctions it should first inquire whether any supplementation was foreseen or is needed. Such an inquiry into OSHA has been made by the federal courts, which have concluded that no private civil remedy is needed to fulfill the goals established by Congress in its adoption of the statute. That this determination was made in the context of a federal civil remedy and not within the framework of the negligence per se doctrine is to us irrelevant, since both concepts share a common raison d'etre -- a judicial addition to statutory penalties thought to be inadequate to the purposes the legislative branch sought to promote.

> We concede that the Mississippi courts need not be bound in this matter by the federal determination of OSHA's purpose and effect. We believe, however, that the Supreme Court of Mississippi would be persuaded by the logic of those opinions to refuse to permit the utilization of OSHA safety standards in this case, either as conclusive proof or evidence of negligence by [the defendant].

*Otto*, 386 F. Supp. at 1245.

¶30. We are persuaded by the district court's reasoning and hold that, in light both of it and of this Court's clearly stated rule that governmental codes and regulations are not admissible unless given compulsory force by the state legislature, evidence of OSHA regulations is not admissible to show negligence.

¶31. Regarding the admissibility of OSHA violations for the purpose of impeaching the testimony of W.C. Fore, the trial court ruled before trial that such evidence was inadmissible, and instructed Mr. Fore prior to his testimony that no mention should be made of violations of OSHA standards. Thus, when counsel for Sumrall asked Mr. Fore about his compliance with federal regulations, counsel either was referring to regulations other than OSHA or was ignoring the court's ruling, apparently the former since he wanted to impeach Mr. Fore's testimony with evidence of OSHA violations. In denying the impeachment request, the trial judge stated:

> If there is some other standard that he has now violated, then I will allow [counsel] to go into those specifically. And he can ask him about those standards, industry wide or some safety standard that he thinks that they violated. But I'm not going to let him go into OSHA. I'm going to stay away from it. I think it would just point up -- I don't think you can ask him, did you

violate -- did he follow all standards and then when he says, yes, use that to open the door as to going into OSHA. I just don't think that's proper because then he'd have to say, he'd have to say no if that -- if we were going to cover OSHA. And I already instructed him that he could [not] go into that.

* * *

I don't believe that if I say that you can't go into OSHA, that you can get it through the back door by saying -- by admitting that you violated some standard and then just leave it out there, that there's some standard that's been violated and then I'm not going to let you go into what it was or where it's from or no mention of it and they can't cross examine him on it because they can't go into it. I don't think that was -- I do not think that is the way it should go and if there's some other specific violation of some other standard, safety code or some other violation I will allow you to go into that specifically. However, I am not going to allow you to go into OSHA.

¶32. We agree with the trial court that Sumrall may not introduce otherwise inadmissible evidence through the "back door" by impeaching Mr. Fore's response to a question that should not have been asked in the first place. There can be little doubt that counsel's true intent was not to impeach Mr. Fore's credibility, but rather it was to present evidence of OSHA violations which he could not introduce otherwise. The trial court did not abuse its discretion in refusing to allow this evidence.

### B. Jackson County Ordinances and Other Industry Standards

¶33. Sumrall proffered the testimony of T.E. Daughdrill that a Jackson County ordinance required that excavations of a certain depth require the approval of a county engineer. There was some question as to the county's enforcement of the ordinance, and the trial court excluded Mr. Daughdrill's testimony about it because he was not qualified to testify about when the ordinance was enforced by the county and when it was not. Sumrall argues that the trial court erred in excluding evidence of the ordinance and "other industry standards" which he identified neither at trial nor in his brief.

¶34. Sumrall offers no argument as to why the trial court erred in this regard and cites no authority in support thereof, instead confining his argument to the admissibility of OSHA regulations. In any event, the qualification of an expert witness to testify is within the sound discretion of the trial court, whose determination will not be reversed by this Court absent an abuse of that discretion. *West v. Sanders Clinic for Women, P.A.*, 661 So. 2d 714, 720 (Miss. 1995); *Cooper v. State*, 639 So. 2d 1320, 1325 (Miss. 1994). We find the trial court did not abuse its discretion in excluding Mr. Daughdrill's testimony regarding the Jackson County ordinance due to his lack of qualification to testify about when the ordinance was enforced.

### IV. WHETHER THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE OF AN INDEMNIFICATION AGREEMENT BETWEEN THE CONTRACTOR FOR WHOM SUMRALL WORKED AND MISSISSIPPI POWER COMPANY.

¶35. Sumrall argues the trial court erred in excluding evidence of an agreement between W.C. Fore and Mississippi Power whereby W.C. Fore would indemnify Mississippi Power for any liability

incurred as a result of the work performed by W.C. Fore. The trial judge questioned the relevance of the evidence and ruled that any relevance was outweighed by the prejudicial effect the evidence would have on the jury, citing Mississippi Rules of Evidence 403. Sumrall contends that evidence of the indemnification agreement was necessary to prove that W.C. Fore had an interest in the litigation.

¶36. Sumrall again fails to offer any authority in support of his assignment of error. As previously stated, the appellant bears the burden of persuasion on appeal, and this Court will not consider issues on appeal for which no supporting authority has been cited. *Century 21 Deep South Properties, Ltd. v. Corson*, 612 So. 2d 359, 370 (Miss. 1992); *R.C. Petroleum, Inc. v. Hernandez*, 555 So. 2d 1017, 1023 (Miss. 1990). We therefore decline to consider this issue on appeal.

## CONCLUSION

¶37. We affirm the trial court's directed verdict in favor of Southern Company Services. However, because Sumrall was not allowed to introduce evidence of subsequent remedial measures for the legitimate purpose of proving control of the project by Mississippi Power, we reverse the jury verdict and judgment in favor of Mississippi Power and remand for a new trial with instructions to the trial court to admit such evidence under a limiting instruction.

¶38. **DIRECTED VERDICT IN FAVOR OF SOUTHERN COMPANY SERVICES AFFIRMED; JURY VERDICT AND JUDGMENT IN FAVOR OF MISSISSIPPI POWER REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE AND SMITH, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. MILLS, J., NOT PARTICIPATING.**