**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 95-KA-00234-SCT**
**CONSOLIDATED WITH**
**NO. 2002-KA-00247-SCT**


*ROBERT LEE TOWNSEND*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 1/11/1995 |
| TRIAL JUDGE: | HON. ELZY JONATHAN SMITH, JR. |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHERYL ANN WEBSTER |
| | DARNELL FELTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/05/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE McRAE, P.J., DIAZ AND CARLSON, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1.     Robert Lee Townsend (Townsend) was convicted in the Circuit Court of Coahoma County,

Honorable Elzy Jonathan Smith, Jr., Circuit Judge, presiding, of the crimes of kidnapping, capital rape, and

sexual battery. He was sentenced to serve consecutive terms of imprisonment of thirty years, life, and thirty years. Aggrieved by the decision, he appealed.[1]

¶2.     Townsend's appellate counsel, Cheryl Ann Webster (Webster), has filed a brief pursuant to *Brown v. State*, 799 So. 2d 870 (Miss. 2001), which was in turn based on *Turner v. State*, 818 So. 2d 1186 (Miss. 2001). Webster states as follows:

> Appellant's court appointed appeal lawyer, Cheryl Ann Webster, has determined that the defendant, Robert Lee Townsend is unlikely to prevail on appeal; further that I have scoured the record thoroughly and asked Mr. Thomas Pearson, who is not appointed to represent Mr. Townsend but who is a member in good standing with the Ms. Bar Association, to do the same. It is my considered opinion after conferring with Mr. Pearson that the error in this trial does not rise to the level of reversible error and therefore the appeal of this case would be frivolous.

Webster then lists the following five errors which might support an appeal:

> I.      Denial of the Motion for Authority to Employ nonlegal assistance at Public expense.
> II.     The Court admitted illegal testimony by and through Andrew Thompson, Sheriff, over the Defendant's objections in violation of the Rules of Evidence.
> III.    The Court admitted into evidence certain illegal items as exhibits particularly State's exhibits 7, 19, 29, 22, and 31 in violation of MRC 901.
> IV.     The Court admitted into evidence certain illegal testimony concerning State's exhibit #1 and State's exhibit #3 in violation of MRC 901.
> V.      The Court admitted into evidence certain illegal items as exhibits particularly State's exhibit #1 and State's exhibit #3 in violation of MRC 901.[2]

Webster also refers to a letter to Townsend in which she informs him of his "right to file a pro se supplemental brief." As of this date, no filings from Townsend have been received.

---

[1]Townsend's route to this appeal was somewhat circuitous. His original attorney filed a late notice of appeal which was subsequently dismissed. The same attorney later failed to file a timely post-conviction motion. Eventually, this Court granted a motion which allowed Townsend's new counsel to file a new motion for new trial. Said motion was filed and denied, and this appeal followed.

[2]Neither party addresses the merits of these possible errors.

¶3. Webster concludes that she has complied with "the procedure outlined in ***Brown v. State***, 799 So. 2d 870 (Miss. 2001), with the exception of having another attorney independently review the record for his considered opinion."

¶4. The State submits that while defense counsel has complied with this Court's holding in ***Turner***, the issue on appeal is whether the procedure in ***Turner*** meets minimum constitutional requirements.

¶5. After having carefully reviewed the entire record in this case, this Court concludes that no reversible error occurred during the trial. Thus, we affirm.

## FACTS

¶6. On the night of December 10, 1994, the victim, a ten-year old girl, was helping her grandparents at their business in Coahoma County when Townsend came in and made a purchase. He took a liking to the victim and had a conversation with her, during which he told her to come outside in five minutes because he needed to tell her something. Townsend then left. Five minutes later, the victim went outside. Townsend grabbed her and, despite her protests, pulled her into his truck. Townsend then drove to his home in Clarksdale. He took the victim inside and physically assaulted her when she refused to put on some men's clothes he gave her. After telling her that he would feed her to the animals and birds if she resisted Townsend put on a "nasty" movie, forced the victim onto the bed, and removed his clothes. He then sexually assaulted her several different times and ways. Upon being interrupted by someone knocking on the door, Townsend hurriedly got up and turned the blood-stained mattress over. After dressing, he and the victim got back into his truck. Before letting her out two blocks from her cousin's house, Townsend told the victim, "You're my woman now," and instructed her to fabricate a story to explain her absence.

¶7.     The victim did not comply with Townsend's instructions. She immediately told the whole story to her family and the Sheriff. Though bleeding and hurting, on the way to the hospital, the victim led officers to Townsend's house. Her description of the interior and exterior of the house matched perfectly. Specifically, she described the vehicles outside the house, the lotion Townsend had used, the movie he had played, the knife he had held to her throat, the clothes he had worn (down to his snake-skin boots), the particular sheets and pillow cases, and the mattress with the blood on the reverse side. The victim later selected Townsend's picture from a photographic lineup and, at trial, identified him as her assailant.

¶8.     Dr. Charles D. Cesare, a gynecologist, treated the victim at the emergency room. He testified at trial that the injuries the victim received were consistent with a child having been penetrated by an adult male organ. The victim had a significant amount of bleeding deep in her vagina. Tests revealed the presence of seminal fluid in the victim's vaginal and anal cavities. According to Dr. Cesare, "[s]omething forceably entered and dilated and tore the delicate tissues of the vaginal tube and of the rectum." There was also bruising to her neck, as well as an injury to the neck "where a sharp object or either a scratch had occurred," and "[t]he back of her head had a little bit of swelling, where it looks like the hair maybe had been traumatized and swollen, about half a centimeter." Dr. Cesare performed surgery on the victim to suture her wounds, and the child remained in the hospital for three to four days.

## ANALYSIS

### I.     DENIAL OF THE MOTION FOR AUTHORITY TO EMPLOY NONLEGAL ASSISTANCE AT PUBLIC EXPENSE.

¶9.     The gist of Townsend's motion to this effect is that his attorneys needed assistance in examining the numerous items of physical and documentary evidence and, because they were not experienced with the

medical examinations and procedures for identifying rape evidence, they needed assistance in that regard as well. Counsel argued:

> In order for the presentation of a proper defense and effective assistance of counsel, Defendant Robert Lee Townsend [should] be authorized to employ at the expense of Coahoma County, Mississippi a private investigator, a serologist, a gynecologist with experience in treating rape victims, and a physician with experience in obtaining rape evidence [and] physical evidence from a male accused of rape.

No order of denial is included in the clerk's papers or mentioned anywhere in the record as far as this Court can find; however, Townsend received no such assistance.

¶10.     In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court, delineated three factors to be utilized in determining whether a defendant is entitled to the assistance of an expert witness to assist in the defense of his case. ***Richardson v. State***, 767 So.2d 195, 199 (¶ 19) (Miss. 2000). Those factors are: "1) the private interest that will be affected by the action of the State; 2) the governmental interest that will be affected if the safeguard is to be provided; and 3) the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided." *Id.*

¶11.     As the Court recognized in *Ake*, the private interest at stake is an individual's liberty. 470 U.S. at 78. Bearing in mind the State's duty to ensure "fair and accurate adjudication of criminal cases," the only significant interest that the Supreme Court found for the State is its economic interest. *Id.* at 78-79. The trial court in the instant case recognized that the only crime more serious than the one leveled against Townsend is when the defendant faces the death penalty. The trial judge also recognized that Townsend's attorneys really had no defense other than to cross-examine the State's witnesses. Because of this, the trial

judge granted Townsend's counsel wide latitude on cross-examination of the State's witnesses. Indeed, the trial judge told Townsend's counsel "you can go on forever."

¶12. "The trial court's decision on a motion for funding for consultants or investigators for an indigent defendant is reviewed for abuse of discretion." *Grayson v. State*, 806 So.2d 241, 254 (Miss. 2001) (citing *Hansen v. State*, 592 So.2d 114, 125 (Miss. 1991)). The State does not have a constitutional obligation to provide indigent defendants with the costs of expert assistance upon every demand. *Johnson v. State*, 476 So.2d 1195, 1202 (Miss. 1985).

¶13. However, this Court does recognize that expert assistance should be paid for in certain cases and will address the need for support on a case-by-case basis to determine whether a defendant is prejudiced by the denial of expert assistance to the extent that he or she is denied a fair trial. *Id.* In determining whether a defendant was denied a fair trial because of failure to appoint or allow funds for an expert, some of the factors to consider are whether and to what degree the defendant had access to the State's experts, whether the defendant had the opportunity to cross-examine those experts, and lack of prejudice or incompetence of the State's experts. *Fisher v. City of Eupora*, 587 So.2d 878, 883 (Miss. 1991). This Court has also considered to what extent the State's case depends upon the State's expert, *Tubbs v. State*, 402 So.2d 830, 836 (Miss. 1981), and the risk of error in resolving the issue for which the expert is requested. *Johnson v. State*, 529 So.2d 577, 592 (Miss. 1988).

¶14. The trial court did not abuse its discretion in refusing to grant Townsend's motion for assistance. As the above authority makes clear, the State of Mississippi does not summarily grant these requests. They must be necessary to preserve the defendant's due process guarantees. In the case at bar, an expert would have been of little assistance to Townsend because the evidence against him, irrespective of that testified

6

to by experts, was overwhelming. This evidence included, inter alia, positive identifications of Townsend by his victim, who, immediately following the crime, described his person, his vehicle, his home, and all he had done to her. Her description of Townsend included, inter alia, his race and sex, his height and complection, his clothing (recovered by police from Townsend's home), his hairstyle, and an unusual knot on the side of his head (which Townsend does have). Her description of Townsend's home included, inter alia, the unusual method of entry used by Townsend.[3] She then directed police to the scene of the crime, Townsend's home. She testified at trial consistent with all she had previously told police.

¶15. The victim's mother testified to the extent of the victim's injuries as she observed them. This description included an account of the victim bleeding heavily from her vagina and rectum, and cuts and bruises on her face and neck. The Sheriff and medical personnel also testified to these injuries as they observed them, and photographs depicting the victim's injuries were admitted through the Sheriff's testimony.[4] The Sheriff described and identified those items seized at Townsend's home that had been used in the crime. Photographs of these items,[5] as well as the items themselves, which had been described by the victim prior to their seizure, were introduced into evidence. The victim's mother also testified that Townsend was a customer of the store and that he remembered the victim from when she was a baby. The

---

[3]She told police that Townsend gained entry to his home by reaching through a broken pane of glass in the door and unlocking the door. The investigation revealed that this is the way Townsend regularly entered his home.

[4]As were photographs the victim examined while attempting to identify her assailant. She successfully identified Townsend out of a number of other photographs. We find nothing questionable about this pre-trial identification or the victim's subsequent at-trial identification of Townsend.

[5]Including, inter alia: a pornographic movie entitled "Dracula, Love Never Dies;" hot oil lotion; Townsend's clothing and snakeskin boots; black leather gloves; a razor type knife; bloodstained sheets, pillow, and towel; a bloodstained mattress (that had been flipped over prior to the police search); and an adult male robe.

Sheriff testified that his investigation had revealed that Townsend gave the victim a $1 tip and a $5 tip from the sale of two hamburgers and a carton of Jungle Juice. This money was recovered from the business and placed into evidence. A carton of Jungle Juice and some wrapping paper indicative of the type used to wrap hamburgers at the business were found at Townsend's home and introduced into evidence.

¶16.    Given this evidence, expert assistance in the areas requested by Townsend would have been of little benefit to his defense. The other evidence against him, irrespective of that testified to by experts, was insurmountable. Thus, any error in refusing to provide Townsend expert assistance was harmless beyond a reasonable doubt.

¶17.    This issue is without merit.

II.    **WHETHER THE COURT ADMITTED ILLEGAL TESTIMONY BY AND THROUGH ANDREW THOMPSON, SHERIFF, OVER THE DEFENDANT'S OBJECTIONS IN VIOLATION OF THE RULES OF EVIDENCE.**

¶18.    "Admission of testimony is subject only to an abuse of discretion review." *Tatum v. Barrentine*, 797 So. 2d 223, 230 (Miss. 2001) (citing *Thompson Mach. Commerce Corp. v. Wallace*, 687 So. 2d 149, 152 (Miss. 1997)).

¶19.    The defense objected several times during the direct examination of Sheriff Thompson, in response to the Sheriff's recounting of statements made to him by the victim. A bench conference ensued. Following it, the district attorney moved on to another subject. This Court finds no reversible error in this exchange.

¶20.    Later, defense counsel objected to the Sheriff testifying to the significance of finding at the defendant's house, inter alia, some wrappers that once contained hamburgers. The Sheriff testified that "the significance of this was that the suspect had been to [the grandparents' business] and ordered two hamburgers." Defense counsel objected to this testimony, unless the Sheriff was speaking from personal

knowledge. The trial judge said, "I think you're going in an improper way about it, Counsel." The parties and the judge went into chambers, and the trial judge instructed the State not to allow the witness to make such identifications, stating, however, that it would be proper to say that the investigation revealed these things. Thereafter, the trial judge offered to give a curative instruction to the jury. Defense counsel refused. No reversible error can be predicated on this ruling.

¶21.    This Court has thoroughly reviewed the entire testimony of Sheriff Thompson and has found no reversible error.

### III.    WHETHER THE COURT ADMITTED INTO EVIDENCE CERTAIN ILLEGAL ITEMS AS EXHIBITS PARTICULARLY STATE'S EXHIBITS 7, 19, 29, 22, AND 31 IN VIOLATION OF MRE 901.[6]

¶22.    The exhibits submitted by counsel as possibly erroneous are as follows: exhibit 7 (lotion), exhibit 19 (samples extracted from Foster's mattress), exhibit 29, exhibit 22 (laundry bag; white towel; striped sheet), and exhibit 31.[7]

¶23.    Mississippi Rule of Evidence 901 deals with authentication and identification. It states, in pertinent part, as follows:

> (a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

---

[6]Though counsel for the defendant cites to MRC 901, this Court assumes she intended to cite to MRE 901. Thus, the discussion in this assignment, and those that follow, focuses on that rule.

[7]This Court has been unable to determine what is contained in exhibits 29 and 31. They are not listed in the clerk's papers or the court reporter's exhibit sheet, nor are they included in the exhibits sent to this Court. Their admission was not asserted as error in Townsend's original direct appeal brief. In any event, this Court concludes that because of the known overwhelming evidence of Townsend's guilt, their admission, if erroneous, was harmless beyond a reasonable doubt.

Miss. R. Evid. 901(a). The rule then lists, by way of illustration only, examples of authentication or identification conforming with the requirements of the rule. Two of the specifically provided examples squarely apply to the exhibits in this case, to-wit, (b) (1) testimony of a witness with knowledge, and (b) (4) distinctive characteristics and the like.

¶24. "Admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion." *Sumrall v. Miss. Power Co.,* 693 So.2d 359, 365 (Miss.1997). "For a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *Terrain Enters., Inc. v. Mockbee,* 654 So.2d 1122, 1131 (Miss. 1995).

¶25. The exhibits mentioned were not erroneously admitted as they were introduced following sufficient foundational testimony by both the Sheriff and the victim. Thus, no abuse of discretion occurred. Moreover, no substantial right of Townsend was adversely affected by the admission of this evidence.

¶26. This assignment is without merit.

**IV. WHETHER THE COURT ADMITTED INTO EVIDENCE CERTAIN ILLEGAL TESTIMONY CONCERNING STATE'S EXHIBIT #1 AND STATE'S EXHIBIT #3 IN VIOLATION OF MRE 901.**
**V. WHETHER THE COURT ADMITTED INTO EVIDENCE CERTAIN ILLEGAL ITEMS AS EXHIBITS PARTICULARLY STATE'S EXHIBIT #1 AND STATE'S EXHIBIT #3 IN VIOLATION OF MRE 901.**

¶27. State's exhibit one was the victim's sexual assault kit. Exhibit three was the defendant's sexual assault kit. These exhibits established that the victim had been raped by someone with the same blood type as the defendant. The defense objected to the introduction of both these exhibits on chain of custody grounds. The defense also objected because when Townsend's sexual assault kit was opened at trial, it contained underwear that was not identified as being in the bag at the time the kit was sealed at the hospital.

¶28. After hearing arguments on the objections, the trial judge overruled them and admitted both sexual assault kits into evidence, with the exception of the underwear, which he excluded and instructed the jury to disregard.

¶29. It is well settled that when the trial judge sustains an objection to testimony and directs the jury to disregard it, prejudicial error does not result. *Wetz v. State*, 503 So.2d 803, 810 (Miss. 1987); *May v. State*, 460 So.2d 778, 783 (Miss. 1984); *Shelby v. State*, 402 So.2d 338, 340 (Miss. 1981). "Admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion." *Sumrall*, 693 So.2d at 365.

¶30. This Court finds no reversible error in these rulings.

**VI. THE STATE SUBMITS THAT WHILE DEFENSE COUNSEL HAS COMPLIED WITH THIS COURT'S HOLDING IN *TURNER V. STATE*, THE ISSUE ON APPEAL IS WHETHER THE PROCEDURE IN *TURNER* MEETS MINIMUM CONSTITUTIONAL REQUIREMENTS.**

¶31. The *Turner v. State*, 818 So. 2d 1186, 1189 (Miss. 2002), requirements are that appellate counsel must:

> (1) determine that the defendant is "unlikely to prevail on appeal." *Smith v. Robbins*, 528 U.S. 259, 279, 120 S. Ct. 746, 761;
> (2) file a brief indicating "that he scoured the record thoroughly." *Hughes v. Booker*, 220 F. 3d 346, 351 (5th Cir. 2000), and "referring to anything in the record that might arguably support the appeal." *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, and
> (3) advise the client of his right to file a pro se supplemental brief. *People v. Wende*, 158 Cal. Rptr. 839, 600 P. 2d 1071, 1073.

After these three steps have been taken that the appellate court must then "make its own independent review of the record." *Id.*

11

¶32.    The State previously asked this Court to revisit this issue in *Evans v. State*, 813 So.2d 724 (Miss. 2002). This Court in *Evans* refrained from addressing this issue based on the premise that both briefs submitted declared that the appeal was without merit, and the fact that no pro se brief was filed alleging any other error. *Id.* at 728. The facts are likewise in the present case. Additionally, in *Evans*, just as in the case sub judice, neither the appellant's counsel nor the appellant addressed the State's suggestions to modify *Turner*. *Id. Evans* was handed down by this Court on April 11, 2002. *Id.* Under these circumstances, this Court will not revisit this issue at this time.

## CONCLUSION

¶33.    After a thorough review of the record, this Court has found nothing to support an appeal. Thus, for the foregoing reasons, we affirm the verdict and sentence below and refrain from extending the *Turner* requirements.

¶34.    **COUNT I: CONVICTION OF KIDNAPPING AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF CAPITAL RAPE AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT PAROLE, AFFIRMED. COUNT III: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT PAROLE, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I. SENTENCE IN COUNT III SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT II.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**