## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00909-SCT

*CRANE CO. d/b/a CRANE DEFENSE SYSTEMS*

*v.*

*LYNDA I. KITZINGER, INDIVIDUALLY, AND AS
MOTHER AND NEXT FRIEND OF ROBERT
JAYCE KITZINGER, AND AS EXECUTRIX OF
THE ESTATE OF ROBERT L. KITZINGER, JR.,
DECEASED*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 2/21/2001 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | J. COLLINS WOHNER, JR. |
| | WILLIAM F. GOODMAN, JR. |
| | MARK D. JICKA |
| | MARK A. DOMBROFF |
| | MARK E. McKINNON |
| | SUZANNE N. SAUNDERS |
| ATTORNEYS FOR APPELLEE: | VINCENT J. CASTIGLIOLA |
| | JOHN A. BANAHAN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 11/20/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted therefor.

¶2.     This case involves the unfortunate death of Robert L. Kitzinger (Bob). On August 25, 1998, Bob fell down a drill rig elevator hoistway to his death. In May 1999, Lynda Kitzinger (Kitzinger) filed suit for the wrongful death of her husband against Noble Drilling Corporation (the owner of the *Paul Romano*), Noble (US) Inc. (Bob's employer), Friede Goldman Offshore, Inc. (formerly Ham Marine and the shipyard hired by Noble to convert the *Paul Romano* to a drill rig) and Crane Unidynamics/St. Louis, Inc. (Unidynamics, a division of Crane Co.) Prior to trial, Kitzinger settled with Noble Drilling Corporation, Noble (US) Inc. and Friede Goldman Offshore, Inc. Kitzinger, also amended the complaint prior to trial to name Crane Co.(Crane) as a defendant.

¶3.     On January 31, 2001, a trial was conducted in Jackson County Circuit Court, Judge Dale Harkey presiding. The jury returned a verdict of 2.5 million in compensatory damages and apportioned liability as follows: 15% to Noble, 35% to Bob and 50% to Crane. The issue of punitive damages was submitted to the jury. After the jury heard evidence, a verdict was returned against Crane in the amount of 15 million dollars in punitive damages. The trial court denied Crane's subsequent motions for JNOV and new trial. Judgment was entered against Crane for 1.25 million (50% of the 2.5 million compensatory damages) and 15 million in punitive damages. From these rulings, Crane now appeals to this Court.

**FACTS**

¶4.     Bob was a former U.S. Navy Master Chief Petty Officer. In 1997, Bob retired from the Navy and pursued a job in the private sector. In November 1997, Bob started work at Noble as an electronics technician (ET).

¶5. An elevator was installed on the *Paul Romano*. A safety feature was installed in the elevator which prevented it from moving when the door of the elevator was open. Prior to Bob's accident, the elevator had not worked on a few occasions because the door was either not properly closed or vibrations caused the door to open.

¶6. On August 25, 1998, Bob was working with Ed Seger (Seger)on the drilling rig's ballast control system. During the course of the night the elevator became stuck and was not available for use. Robert Wallis (Wallis), an electrician, did not look at the elevator before he went to sleep at 3:30 a.m. on August 25. Bob called Seger at 8:00 a.m. from the pump room that same morning. Bob asked Seger to see if Wallis could get the elevator to operate. On August 24, Wallis had worked his 6 a.m. to 6 p.m. shift, then continued to work until 9 p.m. after which time Wallis briefly slept and was awakened at midnight to work on a crane until 3:30 a.m. on August 25. Once Seger learned of Wallis' work schedule, Seger declined to wake Wallis for the elevator repair.

¶7. Eventually, Bob and Seger went to the elevator hoistway together. Bob descended the hoistway. When Bob was approximately half way down the shaft, he stated that he would need help. Shortly thereafter, Bob fell from the hoistway to the bottom of the shaft and called for help. Bob later died from the injuries that he sustained from the fall.

### STATEMENT OF ISSUES

I. **Whether the trial court erred by excluding Noble's Policy and Procedures Manual, Safety Handbook, and related testimony.**

II. **Whether the trial court erred by excluding the testimony of O'Neil Mendoza.**

III. **Whether punitive damages were properly assessed.**

**IV.** **Whether, in the alternative, punitive damages should be remanded or remitted.**

**V.** **Whether the trial court erred by refusing to order disclosure of settlements or to consider a credit.**

**VI.** **Whether the Mississippi statutory appeal penalty is unconstitutional as applied to punitive damages.**

## LEGAL ANALYSIS

¶8.    After careful review, we find that the first and second issues are dispositive of the case. The exclusion of the Noble Policy and Procedures Manual, the Safety Handbook and accompanying testimony was an abuse of discretion and prejudiced Crane. However, the trial court did not abuse its discretion by excluding the testimony of O'Neil Mendoza. Accordingly, we find that the case is reversed and remanded for a new trial not inconsistent with this opinion.

**I.**    **Whether the trial court erred by excluding Noble's Policy and Procedures Manual, Safety Handbook, and related testimony.**

¶9.    This Court has held that the standard of review for either the admission or exclusion of evidence is abuse of discretion. *Whitten v. Cox,* 799 So.2d 1, 13 (Miss. 2000); *Floyd v. City of Crystal Springs*, 749 So.2d 110, 113 (Miss. 1999). The court will not reverse the admission or exclusion of evidence unless the error adversely affects a substantial right of a party. *Floyd,* 749 So.2d at 113. "[F]or a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *Terrain Enter., Inc. v. Mockbee*, 654 So.2d 1122, 1131 (Miss.1995).

¶10.    Kitzinger filed a motion in limine to exclude Noble's safety handbook and policy and procedure manual. The trial court granted Kitzinger's motion. Thus, Crane was prohibited

4

from admitting the handbook and manual into evidence. The trial judge based his decision on *Catholic Diocese of Natchez-Jackson v. Jaquith*, 224 So.2d 216 (Miss. 1969) and *Sumrall v. Miss. Power Co.*, 693 So.2d 359 (Miss 1997). In addition, the judge determined that the jury may be confused about the issue of the standard of care.

¶11. In *Jaquith*, a high school student was injured when he ran into a gymnasium wall. *Jaquith*, 224 So.2d at 219. The student subsequently died from the head injury following surgery. *Id*. The plaintiffs in the case claimed that the gym should have had padded walls and attempted to introduce a book and pamphlet which recommended the use of padded walls. *Id*. at 220. This Court held that "[t]he general rule in this state, as elsewhere, is that books, pamphlets and treatise are not admissible into evidence to prove facts contained therein since they are generally considered hearsay evidence." *Id*. The Court held that the admission of the evidence in *Jaquith* was erroneous, but amounted to harmless error in that instance. *Id*. at 221.

¶12. In *Sumrall*, the trial court prohibited evidence of Occupational Safety and Health Act (OSHA) regulations. *Sumrall*, 693 So.2d at 366. This Court found that the trial court did not abuse its discretion by refusing to allow the evidence. *Id*. at 367. Mississippi has declined to give compulsory force to OSHA regulations. *Id.* at 366. "We are persuaded by the district court's reasoning and hold that, in light both of it and of this Court's clearly stated rule that governmental codes and regulations are not admissible unless given compulsory force by the state legislature, evidence of OSHA regulations is not admissible to show negligence." *Id.* at 367. Consequently, the regulations were not admissible to show negligence on the part of the

company. *See **Accu-Fab & Construction, Inc. v. Ladner***, 778 So.2d 766, 771 (Miss. 2001)(OSHA regulations were admitted for other purposes such as a measure of reasonable care consistent with industry standards).

¶13. Crane argues that the trial court's reliance on *Jaquith* and *Sumrall* does not justify the exclusion of the handbook and manual evidence. Crane asserts that the evidence in *Jaquith* had no factual connection to the case, and the evidence in *Sumrall* dealt with policy and statutory considerations unique to OSHA. In this case, Crane claims that the handbook and manual are directly and factually relevant to the case. The evidence would establish the type of safety information available to Bob and allow the jury to determine the reasonableness of his actions. Crane, also, argues that it had to redact the deposition testimony of Jack Frost pertaining to safety information and training available to Bob. This testimony included information that Noble employees receive a copy of the handbook; are required to read the handbook; sign a form acknowledging that the employee has received, read and are familiar with its contents; and that a written test is administered to employees. Furthermore, redactions from Frost and other witness depositions testimony concerning fall protection also was excluded by the trial court.

¶14. Kitzinger argues that the manual and handbook were prepared by a third-party organization and are hearsay. In addition, she claims that there were no claims in issue between Noble and Crane. Kitzinger asserts that Bob's duty to Crane was to act as a reasonable man and that he had no duty to Crane to follow Noble's handbook or manual.

¶15. When Kitzinger first filed her wrongful death lawsuit, Noble was included among the listed defendants. Subsequent to the filing, Kitzinger made an undisclosed settlement with

6

Noble and other party defendants. A joint motion for dismissal was filed. The trial court then granted a judgment of dismissal with prejudice. Furthermore, in Unidynamics' answer and defense, contributory negligence on the part of Bob was asserted in both the answer and the affirmative defenses. The trial court granted Kitzinger's motion to file an amended complaint. The amended complaint, among other things, includes the named defendant Crane Co. d/b/a/ Crane Defense Systems. Again, contributory negligence was asserted in the amended answer and affirmative defenses.

¶16.    It is not contested that Bob received a copy of the Noble handbook. Bob was employed by Noble. The handbook was furnished to each Noble employee. The handbook referenced the manual and both addressed fall protection. The handbook and manual would show Bob's state of mind and the extent of his exercise of reasonable care at and prior to the time of the incident. This in turn could assist the jury in its determination of the reasonableness of Bob's actions and of the allocation of comparative fault under the facts of this case.

¶17.    The record reflects that the handbook was proffered by Crane for identification before the trial judge. The record also reflects that the safety manual was not proffered at trial. Despite the lack of this proffer, the trial court did conduct a hearing on the motion in limine.

¶18.    The Court of Appeals in *Sims v. Collins*, 762 So.2d 785, 788 (Miss. Ct. App. 2000), held that the trial court erred by not allowing the jury to hear evidence that Collins wielded a weapon at the Simes after a car collision. The appeals court determined that the jury should be able to hear the "entire series of events connected with the accident" and that a grant of a motion in limine should not "unduly restrict the opposing party's presentation of its case." *Id*. In addition, the appellate court held that even though Collins argued that the Simes failed to

make a proffer of evidence, "the pleadings in this case provide an adequate record of what evidence the Simes would have offered had the court not sustained the motion in limine. *Id*. at 789. Based upon the *Sims* case, the hearing and motion and response to the motion discussed the manual, gave an adequate record of the evidence and suffices as a proffer to the trial court.

¶19. Accordingly, the trial court abused its discretion by excluding the handbook, manual and accompanying deposition testimony. The evidence concerns the reasonableness of Bob's actions.

### II.  Whether the trial court erred by excluding the testimony of O'Neil Mendoza.

¶20. The standard of review for the admission or exclusion of testimony is abuse of discretion. *Whitten,* 799 So.2d at 13. "The admission of expert testimony is addressed to the sound discretion of the trial judge. Unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, that decision will stand." *Roberts v. Grafe Auto Co.*, 701 So.2d 1093, 1098 (Miss. 1997).

¶21. Crane next complains that the trial court erred by excluding specific testimony of O'Neil Mendoza, a project manager for the *Paul Romano*. This exclusion, Crane asserts, severely prejudiced Crane. Kitzinger called Mendoza to testify concerning pay scales for Noble Drilling ET employees, conversion costs for the *Paul Romano* and Noble's general experience with elevators.

¶22. On cross-examination, Mendoza testified that Noble chose to have a non-ABS class elevator. Crane wanted Mendoza to testify to certain facts on cross-examination.

8

Specifically, Crane attempted to question Mendoza concerning whether Noble intended to have the elevators certified under ABS rules; how Noble intended to service the hoistway in the absence of a ladder; and whether the ABS class designation applied to the elevator. After listening to testimony provided to the jury and proffered testimony, the trial court sustained Kitzinger objection. The judge determined that Mendoza was not an expert, the questions posed were not fact questions, and he was not designated as an expert. During the proffer, the trial judge asked Mendoza a number of questions to determine the extent of his knowledge. The questions were, in part, as follows:

| | |
|---|---|
| By the Court: | Mr. Mendoza, I think you said earlier that this was the first elevator system installed on a Noble rig? |
| By the Witness: | That I know of. That is correct. |
| By the Court: | **Have you worked on other rigs with elevators?** |
| By the Witness: | **No, I have not.** |
| By the Court: | Okay. Are you familiar with ABS standards for shipboard elevators? |
| By Mr.. Castigliola: | Specifically the ABS Guide to Shipboard Elevators. |
| By the Court: | **Are you familiar with the ABS Guide for Shipboard Elevators?** |
| By the Witness: | **I know the guide exists, and I am not familiar with the details of the rules.** I have read them in the past during a deposition last summer, and that's the first and only time that I have read the rules. |
| By the Court: | You read them in connection - - the first time you ever read those rules was in connection with this litigation? |
| By the Witness: | That is correct. And the reason for that is **I have never been on a rig that had an elevator. I had no knowledge.** |
| By the Court: | I can understand that, and I can see why you wouldn't bother with something you are not associated with. You have never had to - - **in your work history experience have you ever certified elevators as in compliance or not in compliance with ABS Guide to Shipboard Elevators?** |
| By the Witness: | **No, I have not**. |

| | |
|---|---|
| By the Court: | **Have you ever had any involvement with such a process, or procedure or protocols involved in that at all?** |
| By the Witness: | **No, I have not.** |
| By the Court: | I had another one, and I can't - - With respect to your response that I heard from an earlier deposition that you read just a few minutes ago, am I to understand that when you observed this particular hoistway, this particular elevator hoistway, you assumed based upon your other experience in dealing with the - - what did you call them? |
| By the Witness: | The elevator shaft. |
| By the Court: | The elevator shaft. You never had to deal with an elevator shaft? |
| By the Witness: | No, I have not, Your Honor. |
| By the Court: | But you have dealt with structural supports, the big tubes that the rig sits on. Right? |
| By the Witness: | Yes I have. |
| By the Court: | That supports the main platform? |
| By the Witness: | Yes, I have. |
| By the Court: | And your experience in servicing those structures had been to hook a line on to somebody and lower them down maybe? |
| By the Witness: | That's correct. |
| By the Court: | **And you just assumed without any reference to any guidelines, safety features or anything else, that that's how y'all would service this hoistway?** |
| By the Witness: | **That's correct.** |

\* \* \* \*

| | |
|---|---|
| By the Court: | **Do you know whether the ABS Guide applies to an elevator, to this elevator?** |
| By the Witness: | I know the **ABS Guide does not apply to this elevator because the elevator was not a classed system on the rig.** |
| By the Court: | And what's the basis for that opinion that you have? |
| By the Witness: | The **basis for that opinion is based on what I saw go on in the certification process of the elevator.** The ABS surveyor on the rig, which we had one full time, did not certify or issue any class paperwork on the elevator. |
| By the Court: | So, based on your observation of that process that's your conclusion? |
| By the Witness: | That is my conclusion. |
| By the Court: | I don't see that either. I don't see him to be an expert. I don't see these to be fact questions to the extent that you |

10

are going to inquire into them based upon your earlier questions. I don't see a designation as an expert. I will sustain the objection.

(emphasis added). The trial court, also, instructed the jury to disregard any questions or responses of Mendoza "with respect to the application or non-application of the ABS Guidelines for Shipboard Elevators with respect to compliance or non-compliance of the elevator system here at issue." Mendoza was determined to not be an expert nor designated as an expert and the questions were not fact questions. Crane's argument concerning personal knowledge is without merit. Based on the trial judge's examination of the witness, we cannot say that the judge abused his discretion by excluding the testimony of Mendoza. Accordingly, this issue is without merit.

## CONCLUSION

¶23.    For the foregoing reasons, the trial court did not abuse his discretion by excluding the testimony of Mendoza. The trial court did abuse its discretion and erroneously excluded the handbook, manual and accompanying testimony, thus, severely prejudicing Crane. This case is reversed and remanded for a new trial not inconsistent with this opinion.

¶24.    **REVERSED AND REMANDED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB AND CARLSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**