JONES, Justice:
Appellees were the owners of 79.41 acres in Tallahatchie County which was bounded on the west by Mississippi Highway Number 35 and on the north by Hubbard Creek running from the highway in a southeasterly direction. The Highway Commission filed these proceedings to condemn .59 acres situated in the northwest corner of this property. On appeal from the special eminent domain court to the Circuit Court of the First Judicial District of Talla-hatchie County, appellees were awarded a judgment of $8,000. From this judgment the Commission appeals here. The case is affirmed.
While the judgment may appear high or excessive for .59 acres of land, the situation here was somewhat unusual. The *822 jury in the special proceedings awarded $7,500; and on appeal, after hearing the evidence and viewing the premises, the jury of the circuit court awarded $8,000. A motion was made before the lower court to set aside the verdict and grant a new trial on the ground that the verdict was excessive, but the circuit judge who heard the case overruled the motion and held the judgment was not excessive.
At the northwest corner of appellees’ property there was crossing Hubbard Creek a one-lane bridge constituting a part of Highway 35. The Highway Commission desired a tract of land 92 feet wide at the north end, 70 feet wide at the south end, and approximately 600 feet long from north to south, the bridge being at the north end of the strip. The purpose of the taking was to build a two-way bridge, to widen the highway, and to provide necessary approaches to the new structure.
The engineer for the highway department testified that the plans called for two phases of work. The first phase was the erection of the two-way bridge and such work as was necessarily incidental thereto. The first phase would also consist of the extension southward of the work through the north entrance of the driveway to ap-pellees’ home. The second phase, when and if completed (the plans apparently being indefinite), called for the work to be extended across the south entrance of the appellees’ driveway. Thus the yard of ap-pellees would be torn up twice provided the second phase was completed.
Appellees had a few years previously built a residence containing two bedrooms, two ceramic tile baths, a carport with a storage room, other usual rooms, and a water system at an expense of $21,000. They had filled and graded the lands in front of the house between it and the highway so as to improve the lawn, but without affecting the considerable rise from the present highway to the residence. It was shown that in bad weather, appellees presently had trouble approaching their house because of said rise. There was a circular driveway entering the south end of the yard, making a circle up the rise to the house, and continuing back to the highway on the north side of the yard. The lands sought to be condemned did not extend across the entire front yard but left a strip thirty feet wide adjacent to the south end of the land condemned, which strip extended to the highway. It was shown that when the road was completed there would be about a four-foot drop to the bottom of the ditch and the road would be raised about two feet. It was testified that the construction of the road would make the approach to the house steeper than it presently was.
The only witness as to values introduced by the Commission was Mr. Wade Wine-man. He testified the face of the house when the road was constructed would be 82.3 feet from the right-of-way. He also testified that the east edge of the road would be 50 feet from the line of the yard and that the ditch would be 32 feet wide. He admitted there was presently a steep slope and that the construction of the road would increase this slope. Mr. Wineman, the Commission’s appraiser, admitted the difficulties of traveling the driveway in bad weather. He put the fair market value of the property at $40,900 before the taking and after the taking at $39,100, saying thereby that the amount due the Spenc-ers for the taking was $1,800.
The Commission rested after the testimony of its engineer and the introduction of pictures which depict the house, the driveway, the yard, and the slope of the property. The property to be taken was marked by stakes.
Mr. John B. Spencer, Jr., testified he was branch manager at that time of the Greenwood Production and Credit Association. He said that the residence on the place was a brick veneer dwelling on a concrete slab, with a composition shingle roof, two large bedrooms, about 1500 square feet of heated area, two ceramic tile baths, a 20' *823 X 20' carport and storage room, and a circle driveway constructed of gravel. This witness had served as a Federal Land Bank appraiser in Louisiana, Mississippi and Alabama for three years; and, at the time of this trial, he made appraisals for the credit association for land loans. His value of the property before the taking was $42,000 and after the taking, $30,000, the difference in value being $12,000. He based his testimony upon the facts that a large part (one-half) of the front yard would be taken along with some pecan and oak trees, that the slope to the house would be increased, that the removal of fencing would be required, and that the lawn would be narrow and unsightly. He further stated that a factor in his evaluation was that a strip 30 feet wide remained on the south side of that taken, extending to the present highway and leaving the yard in the shape of an “L.”
Mr. John B. Spencer, Sr., testified he owned a Western Auto store in Charleston and was also employed as a resident engineer on construction work. He had engaged in construction work 30 years. He testified, in addition to the description of the house given by his son, that there was a private water system and that there were 45 acres of improved pasture. The balance of the property was in gulleys and hills with pine and hardwood timber. He testified that he had built the house, that the front yard had been built up, and that the present fair market value of the property was $40,000. He further stated that the house was now 12 feet and 3 inches higher than the present roadbed and that the ditch would be 46 feet closer to the house. He testified that the fair market value after the taking would be $30,000 leaving the amount due the appellees $10,000.
Appellees introduced A. B. Shelton, a disinterested party, who was then a real estate broker in Charleston and who also was engaged in doing some appraisal work, although not constantly. This witness had appraised for the Federal Land Bank for more than 29 years and in recent years since his retirement had appraised land in and around Charleston. His testimony was that the present fair market value was $30,000 and the fair market value after the taking would be $25,000, leaving the amount due appellees at $5,000.
Mr. Ned R. Rice, Jr., was next introduced. He, also a disinterested witness, was president of the Tallahatchie County Bank at Charleston and had lived in Charleston 55 years. He was a licensed real estate broker. His estimate of the fair market value before taking was $35,-000 and after taking, $25,000 to $27,000, leaving in his estimation from $8,000 to $10,000 due the appellees.
Mr. B. P. Pritchard, disinterested, had lived in Charleston all his life. He was engaged in a business consisting of several operations including a cotton gin, a grain elevator, and a farm chemicals and fertilizer sales service. His place of business was six miles south of Charleston, and he passed appellees’ property on his way to and from work. He had not had the experience that the other disinterested witnesses had had in appraisal work, but his testimony was that he had a fair knowledge of land values in and around Charleston. His estimate was that the fair market value before taking was $40,000 and the fair market value after taking was $30,000, leaving $10,000 as the amount due the ap-pellees.
Mrs. John D. Spencer, Sr., testified that she was one of the owners of the property; and, when asked her estimates of the values, she put the present value of the property at $50,000 and its after-taking value at $30,000 leaving a difference of $20,000. Objection was made to this testimony and overruled by the court inasmuch as she was one of the owners of the property.
Thereupon both sides rested and, on previous motion by the Highway Commission, the jury was permitted to view the property. When the jury returned its verdict, appellant made a motion to set aside the *824 verdict as excessive and to grant a new trial. This motion was overruled by the lower court. In overruling the motion, the judge made the statement that he had been thinking about the matter since the jury retired, and, if the verdict had exceeded the sum of $8,000 “by very much,” he would have suggested a remittitur or a new trial.
He was of the opinion, however, that the testimony offered by the landowners was sufficient to support the verdict. He referred to the fact that three disinterested witnesses of varying qualifications testified for the landowners. He pointed out that Mr. Shelton was a very well qualified person who testified as to $5,000 damages; Mr. Rice, a very well qualified person, testified to $8,000; and Mr. Pritchard, whose qualifications were not as good as the other two gentlemen, testified to $10,000 damages. The judge also stated that the court could not completely disregard the testimony of the Spencers, although they were very much interested in the award to be made. He further stated that the court was unable to say the verdict was contrary to and against the overwhelming weight of the evidence. He could not substitute his judgment or the judgment of any others for that of the jury. The court also noted that the jury in the Eminent Domain Court had found the landowners to be entitled to $7,500.
Appellants assign here as error the overruling of the motion for a new trial. After a consideration of the testimony by the witnesses, of the pictures depicting the situation, and of the reasoning of the lower court, we are also unable to say the verdict is excessive, that it is contrary to the overwhelming weight of the testimony, or that it manifests bias or prejudice.
Appellant assigns as error the admission of the testimony of Mrs. Spencer as to her estimation of the values. The lower court was correct in holding that she, as an owner of the property, was entitled to give her estimate of the values. Mississippi State Highway Comm’n v. Strong, 240 Miss. 756, 766, 129 So.2d 349, 352. It is manifest too that appellant was not prejudiced by this testimony. The jury, after having viewed the property, returned a verdict of less than the amounts testified to by the husband or son and returned a verdict in accordance with the values shown by the disinterested witnesses.
Appellants assign as error the granting of two instructions to the appel-lees. The first instruction was practically in the words of the statute prescribing the instruction to be given by the special court of eminent domain proceedings. See Miss. Code 1942 Ann. § 2760 (1956). Instruction Number 2 for the appellees told the jury in part that no other recovery at a later date would be permitted for damages, if any, as a result of the taking of the land and of the type, place, method and kind of the construction of the proposed road. It further instructed the jury that it should consider the completed road as shown by the plans therefor which had been introduced into evidence and determine the effect of such construction on the market value of the Spencer property. This instruction was prompted because of the fact that the engineer testified the work was to be done in two phases but that it was not known definitely that the second phase would be done or, if so, when it would be done. We think the jury had a right to know that the present verdict was all that the appellees could ever receive. The instructions taken as a whole properly define the measure of damages, and the jury was specifically told in an instruction obtained by the Commission that the verdict was not to exceed the difference between the fair market value before and after the taking.
Appellant also assigns as error the refusal to grant Instruction Number 4 requested by it. This instruction told the jury that all of the law of the case was given in the written instructions and that the jury was bound to read and follow *825 these instructions as the law of the case. This instruction was refused by the court, because it gave Instruction Number 3 for appellant in which the jury was instructed that all of the law to be considered in reaching a verdict in the case was contained in the written instructions given by the court, and upon these instructions and the evidence alone should the verdict be made. What was requested in the fourth instruction was contained in the third instruction, and we see no error in the refusal of Instruction Number 4.
Accordingly, the case is affirmed.
Affirmed.
ETHRIDGE, C. J., and RODGERS, BRADY, and INZER, JJ., concur.