# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-CA-00455-SCT

*WENDELL L. BROWN AND HAZEL BROWN*

*v.*

*MISSISSIPPI TRANSPORTATION COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/26/1998 |
| TRIAL JUDGE: | HON. DANIEL D. GUICE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEY FOR APPELLANTS: | PRO SE |
| ATTORNEYS FOR APPELLEE: | GARY WHITE |
| | JAMES B. WRIGHT, JR. |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED - 09/09/1999 |
| MOTION FOR REHEARING FILED: | 10/08/99; denied 12/02/99 & Paras. 28 & 29 modified |
| MANDATE ISSUED: | 12/09/99 |

## BEFORE PRATHER, C.J., BANKS AND SMITH, JJ.

## SMITH, JUSTICE, FOR THE COURT:

¶1. This case comes to this Court from the Special Court of Eminent Domain of Harrison County, in which landowners, Wendell L. and Hazel Brown, dispute the amount awarded by a jury for their property. The Browns fail to cite supporting authority concerning most of the issues raised; and therefore, we do not consider those issues. The Browns were entitled to relocation expenses but failed to follow the statutory scheme to recover those funds. We also find that the trial court erred in instructing the jury concerning the landowners' valuation testimony Instruction P-6, but this was harmless error as the jury verdict of $57,365 fell between the $54,000 value of the property submitted by the Mississippi Department of Transportation's appraiser and the $61,500 value submitted by the Browns appraiser. We affirm the trial court's judgment.

### FACTS

¶2. In order to widen U.S. Highway 49, the Mississippi Transportation Commission (hereinafter "Commission"), filed a complaint in the Harrison County Special Court of Eminent Domain to condemn the Browns property located in Harrison County. After the parties were unable to reach an agreement, the

Commission sought to receive the right of immediate title and possession. On May 16, 1996, the trial court granted the right of immediate title and possession and entry upon the lands sought to be condemned. The Browns were given thirty days after the deposit of the compensation to vacate the property.

¶3. On the property sought were two buildings, a converted house and a storage building. Approximately one-half of the Browns converted house rested on the strip of the subject property.

¶4. On October 23, 1996, the Commission filed a Motion for Contempt Citation for the Browns failing to vacate the property. The Commission stated that a sum of $55,100 was deposited into the registry of the court on June 19, 1996, but the Browns failed to vacate.

¶5. On November 1, 1996, the Browns filed a Response to Motion for Contempt Citation. The Response alleged that the Browns had made forty-eight trips in attempting to get moved, but had run out of funds. The Browns therefore, requested either part or all of the funds deposited to be released. Further, the Browns alleged that they were entitled to 90 days to vacate.

¶6. On November 12, 1996, the Browns filed a Motion to Restrain the Commission from entering the property not taken and from taking a portion of the house structure not found on the property taken.

¶7. After a hearing, an order was entered allowing the Browns to retain title and possession of the building partially located on the condemned property. The order stated that the Browns elected to move the building rather than seek compensation from the Commission for the value of the building. It was stated that the Commission does not, nor ever had title or possession to the building. The order gave the Browns twenty-one days to remove the building, and further, the Commission was not liable to the Browns for the expense of moving the building.

¶8. On July 14, 1997, the Commission filed a Motion in Limine to prevent the Browns from entering any evidence to an alleged loss to a building and prevent an appraiser from testifying to the value of the property including the building. Further, the Commission wanted to prevent testimony regarding the cost incurred in relocating the building. The Browns claim that in addition to the amount of the jury verdict, they are entitled to $12,000 moving expenses and $25,000 relocation expenses.

¶9. On January 15, 1998, an Order Sustaining Motion in Limine was filed. On January 16, 1998, the Browns filed a Petition for Interlocutory Appeal.

¶10. After a trial on the matter, the jury returned a verdict fixing the Browns' compensation at $57,365, and judgment was entered accordingly. The Browns filed a Motion for Additur or in the Alternative for a New Trial which was denied. Feeling aggrieved, the Browns appeal to this Court raising the following issues:

> **I. WHETHER THE BROWNS WERE DENIED DUE PROCESS IN NOT BEING NOTIFIED OF THE ORIGINAL HEARING IN THIS CASE.**
>
> **II. WHETHER THE TRIAL COURT ERRED IN PROHIBITING THE BROWNS FROM RECOVERING MARKET VALUE OF THE HOUSE ON THE PROPERTY TAKEN, AND/OR COSTS OF MOVING THE HOUSE FROM THE PREMISES AND COSTS OF RECONNECTING THE HOUSE UTILITIES.**
>
> **III. WHETHER THE TRIAL COURT ERRED IN PROHIBITING THE BROWNS**

FROM PRESENTING TO THE JURY THE FACTS THAT THERE WAS A HOUSE ON THE PROPERTY AT THE TIME OF THE TAKING AND THAT AN ANTIQUE BUSINESS WAS BEING CONDUCTED THEREFROM.

IV. THE SPECIAL COURT OF EMINENT DOMAIN ERRED IN SUSTAINING MDOT'S MOTION IN LIMINE IN AN ORDER DATED JANUARY 20, 1998 WHICH PROHIBITED THE BROWNS FROM MENTIONING THE HOUSE.

V. THE COURT ERRED IN REFUSING TO ORDER THE MDOT TO PRODUCE ANY AND ALL DOCUMENTS REQUESTED IN THE SUBPOENA DUCES TECUM SERVED ON DONALD DAVIS, EMPLOYEE OF MISSISSIPPI DEPARTMENT OF TRANSPORTATION.

VI. THE COURT ERRED IN REFUSING TO ALLOW CROSS EXAMINATION OF PROPERTY PURPORTEDLY USED BY MDOT FOR IT APPRAISAL, THAT OF SALE OF 10/16/89, COFIELD TO CAIN IN DEED BOOK 1143, PAGE 501 WHEN IT WAS SENT TO BROWNS AS DISCOVERY AND THE FIGURES OF THAT AND THE OTHER PROPERTY TALLY, BUT THE SUBSTITUTED PROPERTY OF WHICH NO COMPARABLE DATA SHEET WAS EVER FURNISHED DOESN'T TALLY.

VII. THE COURT ERRED IN ALLOWING MDOT TO USE THE PROPERTY SOLD BY SAWYER REAL ESTATE TO JOHN FORETICH ON 2/22/96 WHEN THE COMPARABLE DATA OF THIS PROPERTY WAS NEVER FURNISHED UNTIL THE DAY OF TRIAL IN VIOLATION OF THE COURT ORDER TO MDOT TO FURNISH SUCH DATA ON 1/20/98.

VIII. THE COURT ERRED IN REFUSING TO ALLOW ANY MENTION OF THE HOUSE LOCATED PARTIALLY ON THE PROPERTY TAKEN AND PARTIALLY ON THE PROPERTY REMAINING, ON THE DATE OF TAKING, APRIL 17, 1996.

IX. THE COURT ERRED IN REFUSING TO ALLOW APPRAISER FRED LEWIS TO TESTIFY IN REBUTTAL OF MDOT'S COMPARABLE SALES DATA #1, WHICH WAS SOLD 3/2/95, DEED BOOK 1298 PAGE 580 WHEN LEWIS WAS FAMILIAR WITH THE PROPERTY AND WOULD OFFER PROOF THAT IT WAS NOT A COMPARABLE SALE OF PROPERTY.

X. THE COURT ERRED IN ALLOWING INTO EVIDENCE COMPARABLE SALES DATA #1.

XI. THE COURT ERRED IN REFUSING TO ALLOW EVIDENCE OF MOVING AND RELOCATION EXPENSES.

XII. THE COURT ERRED IN REFUSING TO ALLOW THE BROWNS APPRAISER, LEWIS, TO TESTIFY AS TO THE EFFECT OF THE CURB BEING PLACED BY MDOT AND ITS FURTHER EFFECT ON THE AFTER VALUE OF BROWNS PROPERTY.

XIII. THE COURT ERRED IN REFUSING TO ALLOW EVIDENCE BY BROWNS OF

**THE PROPERTY'S UNSALABLENESS.**

**XIV. THE COURT ERRED IN REFUSING TO ALLOW HAZEL BROWN TO TESTIFY IN DETAIL OF HER FAMILIARITY WITH REAL ESTATE AND SIMILAR PROPERTIES.**

**XV. THE COURT ERRED IN REFUSING TO ALLOW WENDELL BROWN TO TESTIFY IN DETAIL OF HIS FAMILIARITY OF VARIOUS SIMILAR PROPERTIES OF WHICH HE HAD KNOWLEDGE AND ESPECIALLY ABOUT THE CONDITION OF THE PROPERTY NEXT DOOR WHICH HAD UNDERGROUND GASOLINE TANKS AND TWO BUILDINGS THAT HAD EXTENSIVE FIRE DAMAGE WHICH GREATLY REDUCED THE VALUE.**

**XVI. THE COURT ERRED IN RESTRICTING THE LATITUDE OF BOTH BROWNS TESTIMONY.**

**XVII. THE COURT ERRED IN GRANTING MDOT INSTRUCTION P-6.**

**XVIII. THE COURT ERRED IN ALLOWING MDOT TO CROSS EXAMINE LEWIS ABOUT HIS ORIGINAL APPRAISAL WHICH INCLUDED THE HOUSE THEREIN AND HIS AFTER VALUE OF $75,000 OF THE PROPERTY AND NOT ALLOWING AN EXPLANATION BY LEWIS WHEN IN FACT THE MDOT HAD OPENED THE DOOR TO THE COURTS ORDER IN LIMINE THEREIN.**

**XIX. THE COURT ERRED IN ALLOWING SCHOOL TEACHERS, WHO ARE EITHER EMPLOYEES OF THE STATE OF MISSISSIPPI, OR PREJUDICED TO WANT MDOT TO WIN BECAUSE OF THEIR STATE PENSION PLANS, ON THE JURY.**

**XX. THE COURT ERRED IN NOT ORDERING THE REQUESTED ADDITUR OR IN THE ALTERNATIVE, A NEW TRIAL.**

**XXI. THE COURT ERRED IN SUBORNING THE PERJURIOUS TESTIMONY OF THE MDOT APPRAISER, DANIEL H. LOFLIN, AND ALLOWING THE MDOT COUNSEL, GARY WHITE TO SUBORN THE PERJURY AND OBSTRUCT JUSTICE.**

## LEGAL ANALYSIS

### I. WHETHER THE BROWNS WERE DENIED DUE PROCESS IN NOT BEING NOTIFIED OF THE ORIGINAL HEARING IN THIS CASE.

¶11. The Browns contend that they were denied due process contrary to Sections 14 and 24 of Article 3 of the Mississippi Constitution and the due process clause of the fourteenth amendment to the U.S. Constitution when they were not served notice of the original hearing in this case. However, the Browns failed to present this argument to the lower court. The trial judge cannot be put in error on a matter which was not presented to him for decision. *Cossitt v. Federated Guar' Mut' Ins. Co.*, 541 So.2d 436, 446 (Miss. 1989). The Browns cite to page 2 of the record. However, there is nothing in the record to indicate

that the Browns were not notified of an original hearing. Therefore, this assignment of error is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN PROHIBITING THE BROWNS FROM RECOVERING MARKET VALUE OF THE HOUSE ON THE PROPERTY TAKEN, AND/OR COSTS OF MOVING THE HOUSE FROM THE PREMISES AND COSTS OF RECONNECTING THE HOUSE UTILITIES.

¶12. The Browns argue that they were entitled to compensation for the portion of the house taken and for damages to the remainder. The Browns contend that they never agreed to give up any compensation in order to move the whole house. Once the house was loaded on the house movers truck, the Browns contend that it became personal property and they were entitled to the $12,000 expense of moving the house. In the process of moving the house, the plumbing and electrical wiring had to be removed. The Browns contend that the costs of rewiring and replumbing the house and constructing the steps should be paid to them under the Mississippi Relocation Assistance Law Miss. Code Ann. §§ 43-39-1 to -29 (1993 & Supp. 1998). The Browns assert that if they had purchased another property that needed utilities, the costs would be covered under the above statute. Additionally, the Browns argue that Hazel Brown, as a displaced person or business as described in § 43-39-5 is entitled to the additional $25,000 payment under § 43-39-9. The Browns contend that the business has been shut down since the taking in April 1996, and the inventory and equipment are still in storage because the moving and relocation expenses have not been paid. Finally, the Browns contend that they have had to spend money on moving the house and attorney fees trying to get just compensation for their property that was taken.

¶13. The Commission argues that in sustaining it's Motion in Limine, the trial court was enforcing a court-approved settlement agreement between the Browns and the Commission. The Commission, in accordance with the statute, had also offered $4,394, plus an additional maximum of $1,000 re-establishment expenses by letter date December 13, 1995. The Commission contends that the record is clear that the Browns, through their attorney, asked the trial court to prevent the MDOT from destroying the building and further asked the trial court to allow the Browns to be given and to move the building. MDOT argues that the trial court made clear that if the court signed the order giving them the building and allowing them to move the building, the Browns would have no claim for damages to the building or for expenses associated with moving the building.

¶14. MDOT argues that the doctrine of estoppel applies to preclude the Browns from asserting any entitlement to damages or expenses because the Browns led the trial court and the MDOT to believe that they agreed to the terms stated by counsel for MDOT.

¶15. MDOT condemned a portion of the Browns property upon which a building was partially located. MDOT planned to tear down the building, which would have displaced the Browns antique business. However, the Browns requested that they be given the entire building and be allowed to move the building since it was of no use to MDOT. MDOT agreed to give them the building. Concerning the MDOT allowing the Browns to move the house, the trial judge stated that there was an agreement that MDOT would not be held responsible for moving expenses nor that MDOT ever had title to the building. The Browns now dispute this supposed agreement and assert that they should have received market value for the house and/or received relocation expenses under Mississippi Relocation Assistance Law.

¶16. Relocation assistance as provided for in the Mississippi Relocation Assistance Law was adopted in 1972 to comply with the federal Uniform Relocation Assistance in Real Property Acquisition Policies Act

of 1970. This Act attempted to set out fair and equitable treatment of those displaced by acquisition of private property for federally funded projects. Relocation assistance includes moving expenses for the dislocated person, his family, business, farm operation, his personal property, replacement housing for a home owner displaced from his dwelling, replacement housing for tenants, relocation assistance and advisory services. ***Mississippi State Highway Comm'n v. Waller***, 353 So.2d 755, 757 (Miss. 1977). Since the parties agreed that the Browns could have the building and remove it, then it should be considered their personal property of which relocation expenses should be provided. Miss. Code Ann. § 43-39-7(1)(a) provides:

> If a displacing agency acquires real property for public use, it shall make fair and reasonable relocation payments to displaced persons and businesses as required by this chapter for: (a) Actual reasonable expenses in moving himself, his family, business, farm operation or other personal property....

¶17. The question that arises is whether the Browns waived any rights to claim for expenses associated with moving the building. The following took place with regard to the agreement:

Mr. Berry [attorney for the Browns]: My understanding is that the house will be moved in two weeks; that the DOT will- - that they will put in there that they never had ownership of the house, and that the DEQ will be notified immediately.

The Court: Yes, sir.

Mr. Berry: And I would just like to put in the order that neither party is giving up any of their rights.

The Court: And I think he is talking about putting in the order the fact that they don't claim any ownership in the house.

Mr. Berry: I understand.

The Court: And you're agreeing to that?

Mr. White [attorney for the Commission]: And I am also saying that the order should state that the house should be excluded from any appraisals and that the Department of Transportation will not be liable for the moving expenses.

The Court: That's the main thing we need in there, that they won't be liable for the moving expenses.

Mr. Berry: I don't know if they are liable for it or not, to tell the truth, judge.

The Court: Well, I'll agree that your people should be responsible for moving it if they want the house. That's clear enough to me.

Mr. Berry: Okay. You would be more experienced at this than I am. You know, I'm just pleading ignorance here today.

The Court: I don't believe that.

Mr. Berry: But I'm trying to represent my clients the best I can. However, I don't want to exclude any

of their rights.

¶18. MDOT and the trial judge obviously thought that the matter was settled and that the Browns had agreed to all terms. The record indicates, however, that the Browns counsel did not waive their rights with regard to relocation and re-establishment expenses. In a letter dated December 13, 1995, MDOT stated that because the Browns were owners of a displaced business, the Department, through its Relocation Assistance Program will reimburse expenses incurred to move and reinstall personal property in the amount of $4,394 plus $1,000 on re-establishment expenses.

¶19. Not waiving their rights, the Browns were entitled to relocation and re-establishment expenses. However, since the Browns disagreed with the amount offered by MDOT, the proper procedure would have been an appeal within the Relocation Assistance Program, in which the landowner, aggrieved by the amount offered, as such assistance may, according to Miss. Code Ann. § 43-39-17(1)(c) (Supp. 1993), seek review by the appropriate administrative agency. 353 So.2d at 757.

¶20. Additionally, Miss. Code Ann. § 43-39-25 (Supp. 1998) provides the following:

> Any person or business concern aggrieved by the determination of a displacing agency concerning eligibility for relocation payments authorized by this chapter shall have the right of appeal to the court that would have had jurisdiction if the cause were in eminent domain from such decision at any time within 20 days after actual notice to the aggrieved party....

The Browns were entitled to relocation assistance but should have followed the proper procedure in attempting to acquire that assistance by pursuing administrative remedies and if dissatisfied, then appeal. The Browns failed to follow the statutory guidelines to claim their relocation and reestablishment expenses and are not entitled to such expenses at this late date in this eminent domain proceeding. There is no merit to this issue.

> ### III. WHETHER THE TRIAL COURT ERRED IN PROHIBITING THE BROWNS FROM PRESENTING TO THE JURY THE FACTS THAT THERE WAS A HOUSE ON THE PROPERTY AT THE TIME OF THE TAKING AND THAT AN ANTIQUE BUSINESS WAS BEING CONDUCTED THEREFROM.

> ### IV. THE SPECIAL COURT OF EMINENT DOMAIN ERRED IN SUSTAINING MDOT'S MOTION IN LIMINE IN AN ORDER DATED JANUARY 20, 1998 WHICH PROHIBITED THE BROWNS FROM MENTIONING THE HOUSE.

> ### VIII. THE COURT ERRED IN REFUSING TO ALLOW ANY MENTION OF THE HOUSE LOCATED PARTIALLY ON THE PROPERTY TAKEN AND PARTIALLY ON THE PROPERTY REMAINING, ON THE DATE OF TAKING, APRIL 17, 1996.

¶21. The Browns argue that the court erred in not allowing them to testify completely. Apparently the Browns argue that they were not allowed to testify in court that there was a house on the property used as an antique business, that the court erred in sustaining MDOT's motion in limine, and that the court erred in preventing them from testifying that there was a house located partially on the taken property and partially on the remaining property at the date of taking.

¶22. MDOT contends that the Browns are mistaken concerning issues III, IV and VII. MDOT contends

that the motion in limine did not prohibit the Browns from mentioning the fact that there was a building on the property originally. However, the order prohibited the Browns from offering evidence regarding the value of the building or the expenses associated with moving the building.

¶23. MDOT contends that witnesses for the Browns several times made the jury aware that there was a building on the property which was being used as an antique store.

¶24. The Browns cite no authority in support of the above contentions. As a result, We refuse to consider these issues for failure to support the already sparse argument without any authority. *Cook v. Mardi Gras Casino Corp.*, 697 So.2d 378, 382 (Miss. 1997); *Brown v. State*, 534 So.2d 1019, 1023 (Miss. 1988); *Sumrall v. Mississippi Power Co.,* 693 So.2d 359, 368 (Miss. 1997) (holding that appellant bears burden of persuasion on appeal and that appellate courts will not consider issues on appeal for which no supporting authority has been cited).

### V. THE COURT ERRED IN REFUSING TO ORDER THE MDOT TO PRODUCE ANY AND ALL DOCUMENTS REQUESTED IN THE SUBPOENA DUCES TECUM SERVED ON DONALD DAVIS, EMPLOYEE OF MISSISSIPPI DEPARTMENT OF TRANSPORTATION.

¶25. The Browns argue that they were not furnished the requested documents of Donald Davis specifically, certain appraisals. The Browns cite *Hudspeth v. State Highway Comm'n*, 534 So.2d 210 (Miss. 1988) to support their contention.

¶26. MDOT contends that apparently the Browns complain about the court's refusal to require production of prices paid by MDOT for other condemned property. Further, MDOT contends that the trial court was correct in refusing to require the production of such prices inasmuch as sales to an agency with condemning authority are not admissible in evidence and cannot be used as comparable sales by an appraiser.

¶27. The Browns filed a Motion to Compel and Motion for Continuance seeking an order compelling MDOT to produce certain documents which were the subject of two subpoenas issued by the Browns in July 1997. After issuing the two subpoenas, the trial was continued on at least five occasions. The issuance of the subpoenas was the only discovery taken in this case by the Browns.

¶28. On January 20, 1998 at a hearing on the motion, the trial judge denied the motion for continuance and directed MDOT to provide information from its appraisal of the subject property, but not prices paid to other landowners in the area for condemned property.

¶29. The discovery tools, rules and procedures available in other civil proceedings are available in eminent domain proceedings. *State Highway Comm'n v. Jones*, 649 So.2d 201, 203 (Miss. 1995); *Barrett v. State Highway Comm'n*., 385 So.2d 627, 628 (Miss. 1980). The trial court was correct in denying the production of prices paid for other condemned property. Because they are more in the nature of a compromise and are not, therefore, fair indicators of market value, sales to an agency with condemning authority are not admissible in evidence and cannot be used as comparable sales by an appraiser. *State Highway Comm'n, v. Hyman*, 592 So.2d 952, 957 (Miss. 1991). This issue is without merit.

### VI. THE COURT ERRED IN REFUSING TO ALLOW CROSS EXAMINATION OF PROPERTY PURPORTEDLY USED BY MDOT FOR ITS APPRAISAL, THAT SALE OF 10/16/89, COFIELD TO CAIN IN DEED BOOK 1143, PAGE 501 WHEN IT WAS SENT

**TO BROWNS AS DISCOVERY AND THE FIGURES OF THAT AND THE OTHER PROPERTY TALLY, BUT THE SUBSTITUTED PROPERTY OF WHICH NO COMPARABLE DATA SHEET WAS EVER FURNISHED DOESN'T TALLY.**

**VII. THE COURT ERRED IN ALLOWING MDOT TO USE THE PROPERTY SOLD BY SAWYER REAL ESTATE TO JOHN FORETICH ON 2/22/96 WHEN THE COMPARABLE DATA OF THIS PROPERTY WAS NEVER FURNISHED UNTIL THE DAY OF TRIAL IN VIOLATION OF THE COURT ORDER TO MDOT TO FURNISH SUCH DATA ON 1/20/98.**

**IX. THE COURT ERRED IN REFUSING TO ALLOW APPRAISER FRED LEWIS TO TESTIFY IN REBUTTAL OF MDOT'S COMPARABLE SALES DATA #1, WHICH WAS SOLD 3/2/95, DEED BOOK 1298 PAGE 580, WHEN LEWIS WAS FAMILIAR WITH THE PROPERTY AND WOULD OFFER PROOF THAT IT WAS NOT A COMPARABLE SALE OF PROPERTY.**

**X. THE COURT ERRED IN ALLOWING INTO EVIDENCE COMPARABLE SALES DATA #1 AS STATED ABOVE.**

¶30. In Issue VI, the Browns argue that they were not allowed to cross examine the MDOT appraiser about property used by MDOT for its appraisal, when it was sent to the Browns as discovery.

¶31. MDOT contends that one of the comparables sent by counsel for MDOT was the wrong comparable. Further, MDOT contends that the trial court was correct in refusing to allow counsel for the Browns to cross-examine MDOT's appraiser about the comparable which was not used by the appraiser.

¶32. Generally, the admission or exclusion of testimony based on relevancy is within the discretion of the trial judge, and this Court will reverse only if it finds that an abuse of discretion has occurred. *Mississippi Transportation Comm'n, v. Fires*, 693 So.2d 917, 920 (Miss. 1997); *Terrain Enter's. Inc. v. Mockbee*, 654 So.2d 1122, 1128 (Miss. 1995).

¶33. In this case, the trial judge stated that there were only two comparables used and that the subject comparable was not one of them. Further, the judge sustained the objection to the cross examination and limited it to the comparables that were introduced. However, the trial judge did allow counsel to make a proffer on it.

¶34. By limiting the cross-examination on comparables to the ones introduced, the trial court did not abuse its discretion.

¶35. In Issue VII, the Browns argue that the court erred in allowing MDOT to use the property sold on February 22, 1996, when the comparable data was not furnished until the day of trial in violation of the court order to furnish the data on January 20, 1998.

¶36. Although the Browns objected to the comparable of February 22, 1996, counsel later accepted it. Further, the Browns' appraiser used the same comparable. This issue is without merit.

¶37. In Issue IX, the Browns argue that the court erred in not allowing Lewis, their appraiser, to testify in rebuttal of MDOT's comparable sales data (1) when he was familiar with the property and would offer

proof that it was not comparable. However, during a proffer made by the Browns, the appraiser testified that he would not use the comparable in his appraisal because it is inferior. Counsel for the Browns cross-examined the MDOT appraiser about comparable (1) in front of the jury. It was the jury's province to determine the reliability of the comparable offered by MDOT. It was error to deny the landowner's expert testimony concerning the value of the comparable used by MDOT's expert. It appears that the jury award was quite close to the value of the loss according to the Brown's appraisal. The small difference would indicate that the exclusion of that testimony was harmless. Such an error hardly justifies the expense of a new trial.

¶38. In Issue X, the Browns argue that the court erred in allowing into evidence comparable (1) but no evidence was offered other than the testimony of their expert disagreeing with the use of the comparable. This issue is without merit.

### XI. THE COURT ERRED IN REFUSING TO ALLOW EVIDENCE OF MOVING AND RELOCATION EXPENSES.

¶39. The Browns contend that the court erred in refusing to allow evidence of moving expenses. During trial the Browns attempted to present evidence about relocation expenses. However, the trial judge refused but allowed counsel to make a proffer. During the proffer, counsel stated that Mrs. Brown was prepared to testify that there was an estimate for $15,500, that each item in her business had to be wrapped and that she made trips to move the items. The Browns did not produce an actual bill of the cost of moving, nor was there a mover there to testify about the estimate. Actual expenses were not produced by the Browns. However, Mrs. Brown's testimony concerning the value of her efforts should have been allowed. As the whole question of relocation expenses was not before the court, the failure to allow this testimony is harmless error.

### XII. THE COURT ERRED IN REFUSING TO ALLOW THE BROWNS APPRAISER, LEWIS, TO TESTIFY AS TO THE EFFECT OF THE CURB BEING PLACED BY MDOT AND ITS FURTHER EFFECT ON THE AFTER VALUE OF BROWNS PROPERTY.

¶40. The Browns argue that the trial court erred in not allowing the appraiser to testify concerning placement of the curb on the property and its further effect on the property. However, the Browns failed to give support for their argument. Absent authority in support of an assignment, we will not consider the assignment. *Ellis v. Ellis*, 651 So.2d 1068, 1073 (Miss. 1995).

### XIII. THE COURT ERRED IN REFUSING TO ALLOW EVIDENCE BY THE BROWNS OF THE PROPERTY'S UNSALABLENESS.

### XIV. THE COURT ERRED IN REFUSING TO ALLOW HAZEL BROWN TO TESTIFY IN DETAIL OF HER FAMILIARITY WITH REAL ESTATE AND SIMILAR PROPERTIES.

### XV. THE COURT ERRED IN REFUSING TO ALLOW WENDELL BROWN TO TESTIFY IN DETAIL OF HIS FAMILIARITY OF VARIOUS SIMILAR PROPERTIES OF WHICH HE HAD KNOWLEDGE AND ESPECIALLY ABOUT THE CONDITION OF THE PROPERTY NEXT DOOR WHICH HAD UNDERGROUND GASOLINE TANKS AND TWO BUILDINGS THAT HAD EXTENSIVE FIRE DAMAGE WHICH GREATLY

**REDUCED THE VALUE.**

## XVI. THE COURT ERRED IN RESTRICTING THE LATITUDE OF BOTH BROWNS TESTIMONY.

¶41. The Browns seem to argue that they were prevented from establishing their expertise in real estate and that their testimony was restricted. Again, the Browns have failed to support their arguments with any authority. Therefore, we will not consider these arguments.

## XVII. THE COURT ERRED IN GRANTING MDOT INSTRUCTION P-6.

¶42. The Browns argue that with instruction P-6, the jury was instructed to disregard their testimony even though Wendell Brown had extensive experience in appraising properties. The Browns cite Trustees of *Wade Baptist Church. v. Mississippi State Highway Comm'n*, 411 So.2d 761, (Miss. 1982), to support their position.

¶43. It is settled in eminent domain practice that a landowner may give his opinion of the fair market value of his property. *Potters II v. State Highway Comm'n of Mississippi*, 608 So.2d 1227, 1235 (Miss. 1992); *Mississippi State Highway Comm'n v. Spencer,* 209 So.2d 821, 824 (Miss. 1968); *Mississippi State Highway Comm'n v. Magee*, 186 So.2d 238, 239 (Miss. 1966). This does not, however, mean the landowner can get on the witness stand and say anything he wants. Properly understood, the rule exempts the landowner from showing that he possesses the qualifications necessary in law to be accepted as an expert witness. See M.R.E. 702. It proceeds on the premise that the landowner has acquired a unique view of the property and that he can and ought be allowed to share this view with the jury. Because landowners ordinarily are not experts and trained in the field of property valuation, we do not hold them to precise modes of articulation of the way in which they arrived at the values they give. Nothing in this rule, however, empowers a landowner to present an opinion based upon legally irrelevant factors. *Potters*, 608 So.2d at 1235.

¶44. The following instruction P-6 was given:

> The Court instructs the jury that a landowner may testify to the before and after value of his land without showing he has the same qualifications necessary under the law to be accepted as an expert witness. This does not mean, however, that the landowner may get on the witness stand and say anything he wants.

> For the members of the jury to find the landowners testimony of value to be of any assistance, the landowner must first establish by competent facts not conjecture or supposition, his substantial familiarity with the fair market values of properties of the type in issue and a like familiarity with the property in issue.

> The mere opinion of a landowner as to the value of or damages caused to his property is of little use unless he shows familiarity with the type of land in issue or gives some evidence on which he bases his fair market value testimony. Unless the landowner provides the jury with any substantial evidence to support his testimony, then you the members of the jury may choose to disregard the landowner's testimony on fair market value of his property.

¶45. Instruction P-6 appears to limit the weight that the jury should give the testimony of the landowners.

Further, the second and third paragraphs seem to suggest that the landowners should be held to the precise mode of articulation of which they arrived at the values as that of an expert.

¶46. Instruction P-6 did not instruct the jury to disregard the Browns' testimony. The instruction seems to tell the jury that the Browns were attempting to give semi-expert opinion on land values. The Browns were not experts and were not required to adhere to the requirements for experts. As owners, however, they could testify to the before and after value of their property. It was error to give Instruction P-6 as the instruction appears confusing. However, the error was harmless and does not justify reversal. "No trial is free of error; however, to require reversal the error must be of such magnitude as to leave no doubt that the appellant was unduly prejudiced." *Davis v. Singing River Electric Power Ass'n*, 501 So. 2d 1128, 1131 (Miss. 1987).

¶47. The Browns' testimony never established a basis upon which the jury could base a verdict. The measure of damages in a eminent domain case is the difference between the fair market value of the property before the taking and the fair market value of the property after the taking. *[Blanton v. Board of Supervisors of Copiah County](#)*, 720 So.2d 190, 193 (Miss. 1998). Although both of the Browns testified as to their opinion of the value of the property before the taking, neither testified as to the fair market value of the property after the taking. Regarding the value of the remainder property, Hazel Brown stated "Not very much, being that I'm unable to do a lot with it." Posed the same question, Wendell Brown simply agreed that the property was almost valueless.

¶48. However, the Browns expert appraiser salvaged their case because he testified that the before value of the property was $110,250 and the after taking value was $48,750. Notwithstanding the Browns expert appraisers testimony, their attorney argued to the jury that the proper verdict would be arrived at by using the Browns expert's opinion of the before taking value in the amount of $110,250, but the jury should then use the MDOT's appraisers opinion that the after value taking was only $32,750 and they should then return a verdict for $77,500. The jury awarded an amount that fell in between the values submitted by the Brown's appraiser and that submitted by the MDOT appraiser. Thus the granting of Instruction P-6 was harmless.

¶49. In addition, considering all the instructions as a whole, the jury was adequately instructed. Defects in specific jury instructions do not require reversal where all instructions taken as a whole fairly, although not perfectly, announce applicable primary rules of law. *[Snapp v. Harrison](#)*, 699 So.2d 567, 569 (Miss. 1997). There is no merit to this issue.

> **XVIII. THE COURT ERRED IN ALLOWING MDOT TO CROSS EXAMINE LEWIS ABOUT HIS ORIGINAL APPRAISAL WHICH INCLUDED THE HOUSE THEREIN AND HIS AFTER VALUE OF $75,000 OF THE PROPERTY AND NOT ALLOWING AN EXPLANATION BY LEWIS WHEN IN FACT THE MDOT HAD OPENED THE DOOR TO THE COURT'S ORDER IN LIMINE THEREIN.**

¶50. The Browns argue that the court erred in allowing MDOT to cross-examine Lewis about his original appraisal and not allowing an explanation by Lewis. This assignment of error is without merit. The record reveals that MDOT cross-examined Lewis about the original appraisal without objection from the Browns, and further, the trial judge required MDOT to allow an explanation about the original appraisal.

> **XIX. THE COURT ERRED IN ALLOWING SCHOOL TEACHERS, WHO ARE EITHER**

**EMPLOYEES OF THE STATE OF MISSISSIPPI, OR PREJUDICED TO WANT MDOT TO WIN BECAUSE OF THEIR STATE PLANS, ON THE JURY.**

¶51. The Browns failed to offer any argument as to how the court erred in allowing school teachers on the jury panel. Further, the record reveals that both parties accepted the jury. Therefore, this assignment of error is without merit.

**XX. THE COURT ERRED IN NOT ORDERING THE REQUESTED ADDITUR OR IN THE ALTERNATIVE, A NEW TRIAL.**

¶52. The Browns argue that the court erred in not granting the requested Motion for Additur or in the alternative a New Trial based on counsel's argument in that motion.

¶53. In reviewing a trial court's grant or denial of an additur, this Court's standard of review is limited to an abuse of discretion. *Maddox v. Muirhead*, No. 97-CA-01152-SCT,1999 WL 191698 (Miss. Apr. 8, 1999); *Rodgers v. Pascagoula Pub. Sch. Dist.,* 611 So.2d 942, 945 (Miss. 1992); *State Highway Comm'n v. Warren,* 530 So.2d 704, 707 (Miss. 1988).

¶54. In determining whether the trial court abused its discretion, we ask whether the verdict of the jury is "so paltry as to evince bias, passion or prejudice." *Id.*

¶55. In this case, the jury returned a verdict of $57,365. This amount is between the values presented by the parties' expert witnesses and thus is not so inferior as to evince bias, passion, or prejudice by the jury. The trial court did not err in denying an additur or a new trial.

**XXI. THE COURT ERRED IN SUBORNING THE PERJURIOUS TESTIMONY OF THE MDOT APPRAISER, DANIEL H. LOFLIN, AND ALLOWING THE MDOT COUNSEL, GARY WHITE TO SUBORN THE PERJURY AND OBSTRUCT JUSTICE.**

¶56. The Browns argue that the court suborned the perjurious testimony of the MDOT appraiser and allowed MDOT counsel to suborn the perjury and obstruct justice. However, the Browns do not support their argument with any authority and further, counsel for the Browns failed to raise this issue in their motion for new trial. Also the record reveals that there was no objection by counsel for the Browns to the alleged perjurious testimony. Therefore this assignment of error is without merit.

## CONCLUSION

¶57. The Browns fail to cite supporting authority for most of their numerous points of error. Those unsupported arguments are without merit. The Browns are entitled to some relocation expenses, however, the proper procedure is to appeal to the court that would have had jurisdiction if the cause were in eminent domain from such decision at any time within 20 days after actual notice to the aggrieved party. Although it was error for the lower court to grant instruction P-6, it was harmless error because the jury fairly weighed all of the evidence and granted an award of $57,365, which fell between the value of $61,500 offered by the Browns' appraiser and $54,000 offered by the MDOT appraiser. Therefore, the judgment of the lower court is affirmed.

¶58. **JUDGMENT AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, MILLS, WALLER AND COBB, JJ., CONCUR.**