GRIFFIS, P.J.,
for the Court:
¶ 1. The Mississippi Transportation Commission (“MTC”) appeals the award of $317,675 to Reena Kay Helms Buchanan for the taking of her land as a part of the expansion of Highway 6 in Pontotoc County. MTC claims that the trial court erred by (1) admitting the testimony of Buchanan’s expert, (2) permitting the jury to consider the landowners’ opinions regarding the value of the property, and (3) denying MTC’s motion for a judgment notwithstanding the verdict and for remittitur or, alternatively, for a new trial. We find no error and affirm.
FACTS
¶ 2. On August 19, 2005, MTC filed a complaint to acquire 18.907 acres owned *232 by Buchanan.[1] MTC sought to construct a portion of the new four-lane segment of Mississippi Highway 6 in Pontotoc County between State Road 342 and the Lee County line. The property to be taken included parcel one, consisting of 9.293 acres north of the new road and parcel two, consisting of 9.089 acres south of the new road, for a total of 18.907 acres. These parcels were part of 121.827 acres of undeveloped land owned by Buchanan.
¶ 3. Pursuant to Mississippi’s “quick take” statute,[2] the court appointed Chris Rogers of Tupelo as the independent appraiser. Rogers entered an appraisal for the just compensation for the taking to be $204,000, using the before-and-after-value rule. Following statutory requirements, MTC deposited eighty five percent of the $204,000 plus $1,000 for the appraiser’s fee, totaling $174,400, into the registry of the circuit court. In turn, MTC received the right of immediate entry. In December 2005, Buchanan received the “quick take” proceeds with a trial to be held to determine what additional money she should receive for the taking of her land.
¶ 4. For a variety of reasons, the lawsuit did not move forward until 2008. Notably, the record reflects that discovery was slowed in 2006 due to a shortage of qualified appraisers, as many were working on the Mississippi Gulf Coast in the aftermath of Hurricane Katrina.
¶ 5. On October 31, 2008, MTC filed a statement of value[3] saying that the taken land had a fair-market value of $83,775 and had suffered $1,475 in damages for a total compensation due Buchanan of $85,250. On November 7, 2008, Buchanan filed her statement of value stating that just compensation was $317,675, determined by a “before” value of $728,730 and “after” value of $411,055. On November 11, 2008, MTC filed a corrected statement of values stating the same total value for the land of $85,250, but adding that damage included the reduction in value of two uneconomic remnants of land.
¶ 6. At trial, Tommy Young, an MTC engineer, testified about the project. Young was a resident engineer based in Tupelo. Young testified that it was his responsibility to see that the contractor built the highway project according to MTC’s plans and specifications. He said that MTC needed 18.907 acres of Buchanan’s land for the relocation of a new segment of the four-lane Highway 6 about one mile south of old Highway 6.
¶ 7. William B. Milton, a licensed real-estate appraiser, testified for MTC. He said that he had prepared about sixty ap *233 praisals in Pontotoc County regarding the building of the new Highway 6 and had been recognized as an expert in court about 100 times. Milton testified that the property to be taken was vacant land with no improvement on it to be appraised. To appraise vacant land, Milton used the sales-comparison approach. He said this approach involves locating properties that are considered similar to the property to be appraised and then making a comparison to the property at issue. Milton explained that when finding comparable properties, he first looks at the size of the property, here about 122 acres, and the location of the property. Next, Milton testified that he looks for comparable topography; for example, whether the property is low, level, or steep. Milton explained that to determine the land’s value when there is a taking of less than all of the property, an appraiser must arrive at a value of the entire property before the taking and then calculate the land’s value after a portion of the land is taken by eminent domain.
¶ 8. Further, Milton testified that he determined the “highest and best use” of the property as of the date the case was filed. He said that the definition of “highest and best use” is “that use as of the date of the appraisal that produces the greatest net return to the land or the greatest value to the land.” He said that he used comparable properties and applied the market-data approach, to determine what the property would bring in the market. To arrive at that figure Milton said that he took into consideration that the northern part of the property had frontage on Jaggers Road on the west side and frontage on Anderson Road on the south side. Such direct access would mean that anyone who bought any of the land would have an entryway to their property. Milton valued the northern property and the southern property separately because of the northern part’s easy ability to be developed as home sites. By MTC taking the frontage on the northern area, Buchanan lost the potential to sell the land for home sites.
¶ 9. Milton also testified that he had determined that the “highest and best use” of the northern acreage would be development of housing by selling lots. He estimated the value of the eighteen plus acres with frontage on Anderson Road at $4,500 an acre and the remaining property both north and south of Anderson Road at $2,000 per acre, for a total “before” value of $209,550. The taking left Buchanan with “uneconomic remnants” which Milton described as small fractional parts of land, in this case .148 acres and .224 acres, which have little value. He found the remnants had a total value of $1,475. Milton stated that the entire property was worth $290,550 before the taking and worth $205,300 after the taking. Therefore, he testified that Buchanan was owed $85,250 as just compensation for the taking.
¶ 10. Buchanan offered Edwin Clyde Neelly IV, a licensed real-estate appraiser from Tupelo, as her expert witness. MTC agreed that Neelly was an expert in the field of residential and realty appraisal. Neelly’s testimony about his methodology in arriving at an appraisal was the same as Milton’s. Neelly said the topography, utility, appeal, location and highest and best use are the parameters he used for the appraisal. Using thirteen comparable properties, Neelly opined that before the taking, the entire property was worth $6,000 per acre for a total of $728,730. He said he gave great weight to three sales within a mile of the Buchanan property in making his determination. Looking at the comparable sales, Neelly opined that the property was worth $411,055 after the taking, for a difference of $317,675.
*234 ¶ 11. Hershel Helms, Buchanan’s father, owned the property for approximately forty years. He testified that the value of the property was $10,000 per acre. Helms based his opinion on offers that he had received in the past from people who wanted to buy land to build houses. He also testified that he had asked several of his neighbors what they had paid for their lots, and he used that information in his calculation.
¶ 12. Buchanan testified that she agreed with her father that the property was worth $10,000 per acre. She testified that a personal friend of hers had offered to pay $10,000 for an acre of the property, but her father did not sell the acre.
¶ 13. The jury returned a verdict in favor of Buchanan in the amount of $317,675. The trial judge entered a judgment based on the jury’s verdict. In the judgment, the trial court ordered MTC to deposit $144,275 in the registry of the court to satisfy the judgment as MTC had previously paid $173,644. In return, MTC was vested with ownership of the 18.907 acres to be used in the highway construction. MTC’s motions for a judgment notwithstanding the verdict and for remittitur or, alternatively, a new trial were denied.
ANALYSIS

1. Whether the trial court erred by allowing testimony by Buchanan’s appraiser.

¶ 14. When reviewing a trial court’s decision to allow or disallow evidence, including expert testimony, we are bound by an abuse-of-discretion standard of review. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (114) (Miss.2003). “Unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, [the trial court’s] decision will stand.” Crane Co. v. Kitzinger, 860 So.2d 1196, 1201 (¶ 20) (Miss.2003).
¶ 15. MTC makes two arguments regarding the testimony of Buchanan’s expert, Neelly, which we will discuss together. We must note that MTC stipulated to Neelly’s qualifications as an expert in the field of residential and realty appraisal.
¶ 16. First, MTC argues that Neelly’s testimony should have been excluded because he did not use comparable sales to justify his valuation of the Buchanan property. MTC says that a real-estate appraiser may base his opinion of the fair-market value of the sale prices of similar or comparable properties in the surrounding area. However, MTC claims that Neelly’s comparable sales were not based on similar properties. MTC states that despite Neelly’s admission that the Buchanan property was best suited for both residential and agricultural uses, Neelly only used the value of small, developed residential lots in arriving at a value for a tract of land MTC says was used to grow soybeans and timber.
¶ 17. Second, MTC argues that Neelly improperly averaged the values of both residential and agricultural property to arrive at the per-acre value he assigned to the entire tract. MTC claims that because of the great disparity between the value he assigned to the residential and agricultural properties, his averaging greatly inflated the value of land that was only suitable for farming. MTC said that Neelly’s appraisal was based on mere speculation or conjecture with no supporting facts and, therefore, it was error for the trial court to allow the appraisal into evidence for the jury’s consideration.
¶ 18. Buchanan responds that Neelly met the tests of Rule 702 of the Mississippi Rules of Evidence concerning testimony by an expert: (1) the testimony was based *235 upon sufficient facts or data; (2) the testimony was the product of reliable principles and methods; and (3) the witness applied the principles and methods reliably to the facts of the case. M.R.E. 702.
¶ 19. Buchanan states that Neelly was properly qualified as an expert in the field of appraisals. She said that Neelly applied acceptable standards and that his appraisal was based upon the fair-market value of comparable properties in proximity to the property taken by MTC. Neelly said that he valued the property as a whole with it being used for both agricultural and residential purposes. He testified that he compared properties ranging from $2,250 an acre for agricultural use to $12,000 an acre for residential use. Thus, when valuing the property as a whole for both agricultural and residential use, he came to a value per acre of $6,000. Neelly then diminished the value of the remaining property held by Buchanan because of its loss of access, which was likewise done by MTC’s appraiser.
1120. Buchanan argues that Neelly’s appraisal presented a determination of weight and credibility for the jury rather than a determination of admissibility by the trial judge, and the jury choose to believe Neelly. MTC claims there must be error with such a wide disparity between the appraisal of MTC at $85,250 and that of Buchanan at $317,675.
¶ 21. As to the validity of Neelly’s appraisal, he testified that he evaluated thirteen comparable sales and relied heavily on three sales within a mile of the Buchanan property. Neelly further testified that the property at issue had both agricultural and residential uses, and he stressed the desirability of the land for residential use. Neelly said that the property was near the Lee County line, and he provided information about the trend toward homebuilding in the area by residents who work in and around Tupelo.
¶22. We have said that “[w]hen the jury has had an opportunity to view the premises, observe the location[,] and hear the opinions of the appraisers from both parties, the weight that the evidence will carry is a question for the jury to resolve.” Davidson v. Miss. Transp. Comm’n, 816 So.2d 393, 397 (¶20) (Miss.Ct.App.2001) (citing Miss. State Highway Comm’n v. Terry, 288 So.2d 465, 466 (Miss 1974)). Further, the Mississippi Supreme Court has noted that expert opinions can vary widely in condemnation cases, and “[t]he disparity in the experts’ valuations alone is not indicative of bias, passion and prejudice.” Miss. Transp. Comm’n v. Highland Dev., LLC, 836 So.2d 731, 739 (¶36) (Miss.2002). Both experts were subject to direct and cross-examination with rebuttal testimony in the presence of the jury. More importantly, the jury viewed the property and drew their own conclusions. The jury gave more credibility to Buchanan’s expert, and we find no reason to disturb that finding. Accordingly, this issue is without merit.

2. Whether the trial court erred in permitting the jury to consider the landowners’ opinions as to the value of the property.

¶ 23. The admission of testimony is within the discretion of the trial court, and it will be reversed on appeal only when there is an abuse of that discretion. Miss. Transp. Comm’n v. Fires, 693 So.2d 917, 920 (Miss.1997). It is settled that a landowner in an eminent-domain case may give his or her opinion of the fair-market value of his or her property. Clark v. Miss. Transp. Comm’n, 767 So.2d 173, 178 (¶ 20) (Miss.2000). The landowner is exempt from showing that he possesses the qualifications necessary in law *236 to be accepted as an expert witness under Rule 702. Id. The reason for allowing the landowner to offer an opinion is that he or she has acquired through his or her ownership “a unique view of the property,” which “can and ought to be allowed to [be] share[d] with the jury.” Brown v. Miss. Transp. Comm’n, 749 So.2d 948, 960 (¶ 43) (Miss.1999).
¶ 24. MTC argues that Buchanan and Helms were permitted to testify about “legally irrelevant offers of purchase and sales of properties totally unrelated to the type of the subject property.” MTC says that Helms’s testimony that the property was worth $10,000 per acre was based upon what he had been offered by others in the past who wanted to build houses on the property, and that offers or options to purchase property are not competent evidence to establish the fair market value of property. Miss. State Highway Comm’n v. Robertson, 350 So.2d 1348, 1350 (Miss.1977). Buchanan also testified that she believed that the property was worth $10,000 per acre, and she based this figure on an offer made to her father by a personal friend of hers.
¶ 25. As Buchanan points out in her brief, Helms had owned the property for more than forty years, and he personally dug the drainage ditches in 1970 and 1978 that run through the property to drain it in order for home construction. Further, Helms built Anderson Road in 1978. Thus, Helms’s testimony was not just based upon offers or options of purchase he received for the property. Instead, Helms testified that his opinion was based upon what several neighbors paid for their lots. One such comparable property he used was owned by Scotty Parker, a neighbor whose property adjoins Buchanan’s just north on Jaggers Road, who bought 1.4 acres for $14,500. He also based his opinion on a similar lot nearby on Jaggers Road that sold for $16,500.
¶ 26. As for Buchanan, she lived her first eighteen years near the land and moved back to Pontotoc County in 1984. She testified that she and her father had discussed that the land would best be used for home sites. Her testimony about the value of the land that was based upon an offer to purchase the property should not have been allowed. However, the jury did not accept the $10,000-per-acre valuation Buchanan assigned to the land, but instead accepted the $6,000-per-acre value Buchanan’s expert gave. We find that this issue is without merit.

3. Whether the trial court erred by not granting MTC’s motions for judgment not withstanding the verdict and for remittitur or, in the alternative, for a new trial.

¶ 27. In its third issue, MTC simply restates the arguments made in issue 1 and asks that the Court reverse the trial court’s decision on the post-trial motions. As to the motion to exclude the testimony of Needy, Buchanan’s argument was discussed and rejected in issue 1. As to the motion for new trial, MTC has failed to present sufficient facts and authority that would lead this Court to accept Buchanan’s claim. Indeed, MTC’s brief fails to even state the standard of review for the consideration of a motion for judgment notwithstanding the verdict, for remittitur, or for a new trial. MTC’s brief does not present a factual or legal basis for us to accept its argument. Therefore, having previously found these issues raised by Buchanan to be without merit, we find no other reason to grant the relief requested under this issue.
¶ 28. THE JUDGMENT OF THE SPECIAL COURT OF EMINENT DOMAIN OF PONTOTOC COUNTY IS *237 AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. Buchanan was deeded the property in 1992 by her mother, Darrah Mae Helms, and her father, Hershel Helms. Prior to this transaction, her father had owned the property for some forty years. There are many references in the record to the owner as Helms, and he is joined as a co-defendant in some pleadings.

. Mississippi Code Annotated sections 11-27-81 to -91 (Rev.2004 & Supp.2011), the "quick take” provisions, set forth the procedure by which a condemning authority, in this case MTC, can secure immediate possession of property it seeks to take by eminent domain. The entities authorized to exercise the right of eminent domain are set out in Mississippi Code Annotated section 11-27-81 (Supp. 2011), which includes MTC in its function of acquiring highway right-of-ways.

.The statutory framework provides that not less than twenty days prior to the trial, the plaintiff in the eminent-domain action, in this case MTC, shall file with the circuit clerk a statement showing the fair-market value as of the date of the filing of the complaint of the property to be condemned, and any damages to the remainder of the property, then giving a total of the compensation and damages due, reporting the highest and best use of the property, and making an itemization of the elements of the damage to the remaining property. Miss.Code Ann. § 11-27-7 (Rev.2004).